■ In the Matter of ISPO, INC., Respondent, v CLARK-SCHWE-BEL FIBER GLASS CORP. et al., Appellants

Appeal from the order of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered on or about December 9, 1987, which granted the petition to stay arbitration, is dismissed as superseded by the appeal from the order of August 27, 1987, without costs or disbursements.

Petitioner ISPO, Inc. is the manufacturer of a certain exterior insulation and finish system which is used in the building construction industry. Beginning in December of 1984 and concluding in March of 1985, petitioner purchased from respondent the fiber glass reinforcing mesh needed for its system. The material was acquired through two purchasing agents who initiated transactions in 1 of 2 ways. The first method was to telephone respondent and place an order, then immediately follow up with a written ISPO "Original Purchase Order". The second procedure simply involved sending

an "Original Purchase Order" to respondent. The purchase orders utilized by petitioner included all of the terms required for the transaction in question—price, quantity and the approximate time period in which the purchase would remain in effect. Periodically, ISPO would "work against" one of its purchase orders by notifying respondent that it wished to procure more deliveries of fiber glass mesh pursuant to a particular purchase order. Orders would continue to be made in this manner until either the time specified in the purchase order had expired or the quantity of material indicated had been obtained. In acknowledgment of these purchases against the purchase order, respondent would ship the goods and invoice ISPO for the sales price.

The arrangement between the parties herein consisted of a total of 22 contracts. In each instance, respondent, upon receipt of the purchase order, transmitted to ISPO its standard sales confirmation form. Each form contained a broad arbitration clause stating, in part, that "[a]ny controversy arising under, or in relation to this contract * * * shall be settled by arbitration." ISPO never objected to any of the terms of the sales confirmations and, indeed, signed and returned the first seven of these forms, extending over a 10-month period. However, as the business relationship between the parties became more established, their subsequent dealings apparently grew less formal, and the remaining 15 confirmation orders were not expressly acknowledged. Thereafter, when a dispute arose concerning the quality of the fiber glass mesh, respondent instituted arbitration proceedings to collect the unpaid balances due on the product delivered. ISPO then moved by petition for an order staying arbitration, which was ultimately granted by the Supreme Court on the ground that "[u]nder the facts of this particular case the intent to arbitrate and or course of conduct may not be imputed from the signed contracts to the unsigned ones." In the view of the court, no evidence had been submitted herein to demonstrate the existence of an agreement to arbitrate.

Yet, the present situation is remarkably similar to the fact pattern in *Michel & Co. v Anabasis Trade* (50 NY2d 951), wherein only the first of seven confirmation orders had been signed. According to the Court of Appeals in that case, "[a]n agreement to arbitrate was manifested by appellant by signing the first confirmation of order form with admitted knowledge that an arbitration clause was contained therein and, thereafter, by receiving and retaining six additional confirmations of orders on the same contract form without objection

except for a request for one change as to credit terms, which change was made by the respondent seller" *(supra,* at 952). The court then proceeded to distinguish *Matter of Marlene Indus. Corp. (Carnac Textiles)* (45 NY2d 327) from the matter before it by observing that "[t]here, contradictory contract forms were exchanged between the parties; neither party had signed the other's form and no evidence existed that the recipient of the contract containing the arbitration clause was aware of its presence or had agreed to arbitrate" *(Michel & Co. v Anabasis Trade, supra,* at 952). It is also instructive to note this court's holding in *Matter of Boutique Indus. (Fair-Tex Mills)* (90 AD2d 737), in which we stated, in a case where the purchaser had signed 1 of 3 confirmation orders, each including an arbitration provision, that "Boutique manifested its agreement to arbitrate by signing the third contract containing the arbitration clause and accepting delivery of the goods sent by Fair-Tex upon the second confirmation, without objecting to any of the terms of the confirmations, including the arbitration clause".

There is no question that petitioner herein signed and returned the first seven of the confirmation orders and did so at a time when the business dealings between it and respondent were still conducted in a strictly formal manner. ISPO never indicated that it had any objection to the arbitration clause, and it certainly cannot now claim ignorance of one of the terms of a contract to which it was a signatory. The mere fact that the later confirmation orders were not specifically acknowledged, particularly as the business arrangement between ISPO and respondent became more casual, is not sufficient to negate the clear intent to arbitrate demonstrated by ISPO's signing of seven of the confirmation orders and its acceptance without protest of all 22 of them. Consequently, the petition to stay arbitration should have been denied. Concur—Murphy, P. J., Ross, Carro, Asch and Milonas, JJ.