■ HIGHLAND HC, LLC, Respondent, v PEDER SCOTT et al., Appellants. [978 NYS2d 302]—

In 2006, the plaintiff, Highland HC, LLC (hereinafter Highland), a Delaware limited liability company with a business address in Connecticut, retained the defendant PW Scott Engineering & Architecture, P.C. (hereinafter PW Scott), a New York professional corporation with its principal place of business in New York, to provide architectural and engineering services in connection with the renovation of an existing building and the construction of two new buildings in Connecticut. The individual defendants, Peder Scott and Melanie Ancin Scott, are principals of PW Scott and, at all relevant times, acted as officers and directors of PW Scott.

In furtherance of the project, Highland and PW Scott entered into three separate contracts (hereinafter the primary contracts). Pursuant to the first contract, dated September 12, 2006, PW Scott agreed to provide, among other things, drawings of the existing architectural conditions, a design for the exterior facade, a parking site plan, and construction documents and plans for the proposed additions. In the second contract, dated July 8, 2007, PW Scott agreed to provide site plans and certain other architectural services. The third contract, dated December 20, 2007, required PW Scott to provide construction drawings, including architectural plans, structural designs, and plumbing and electrical systems. The penultimate paragraphs of both the first contract and the third contract provide, in pertinent part: "If everything is acceptable to you, please sign all pages, including the General Conditions, and return them to our office along with your deposit. No work will begin on this

project until this office has received both the signed contract and the deposit." The "General Conditions" page, which is attached to both contracts, just after the signature page, includes, among other clauses, an arbitration provision. That provision provides, in pertinent part: "Any and all disputes between the parties to this contract shall be adjudicated by arbitration under the auspices of the American Arbitration Association."

The penultimate paragraph of the second contract provides, in pertinent part: "The attached General Conditions are part of this proposal and include description of reimbursables. If everything meets with your approval, please sign below and return the original to this office along with the required releases and deposit." Again, the "General Conditions" page is attached to this contract just after the signature page.

The primary contracts, which were prepared by PW Scott, were executed by Highland on the signature page. Highland, however, did not sign or initial any of the attached "General Conditions" pages. Eighteen "Purchase Orders" and twelve "Change Orders," all prepared by PW Scott and signed by Highland, were exchanged on various dates as the project progressed. Of these additional documents, only two made any reference to a "General Conditions" page.

The relationship between the parties deteriorated prior to the completion of the project. Highland commenced the instant action alleging, among other things, that it sustained damages due to the defendants' design flaws, substandard work, and gross inefficiencies. It also alleged that the defendants improperly billed for work that was required to remediate their design flaws and incompetencies and that they engaged in a scheme to "defraud" Highland by overbilling. The amended complaint included causes of action alleging, inter alia, professional malpractice, fraud, and breach of contract. The defendants moved, among other things, to compel Highland to submit its claims against them to arbitration and to stay all proceedings in the action pending arbitration. In the order appealed from, the Supreme Court, inter alia, denied that branch of the defendants' motion, determining that there was no mutual agreement to arbitrate.

As a threshold matter, the defendants are correct in asserting that this action is governed by the Federal Arbitration Act (hereinafter the FAA) (9 USC § 1 et seq.), which applies to any arbitration agreement evidencing a transaction involving interstate commerce (see 9 USC § 2). The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'af-

fecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power" (*Citizens Bank v Alafabco, Inc.*, 539 US 52, 56 [2003]; *see Allied-Bruce Terminix Cos. v Dobson*, 513 US 265 [1995]; *see also N.J.R. Assoc. v Tausend*, 19 NY3d 597, 601 [2012]).

Here, the transactions between the parties clearly involved interstate commerce, as the architectural and engineering plans were created by a firm headquartered in New York, the party developing the property was a Delaware company with a Connecticut address, the property being developed was located in Connecticut, and many of the services and materials for the project were provided by entities outside of Connecticut, including at least two Massachusetts companies (*see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.*, 4 NY3d 247, 252 [2005]).

Through the FAA, Congress has declared "a strong federal policy favoring arbitration as an alternative means of dispute resolution" (*Oldroyd v Elmira Sav. Bank, FSB*, 134 F3d 72, 76 [2d Cir 1998]; *see Rodriguez de Quijas v Shearson/American Express, Inc.*, 490 US 477, 480-481 [1989]). In accordance with this policy, doubts as to the arbitrability of a claim are to be resolved in favor of arbitrability (*see Moses H. Cone Memorial Hospital v Mercury Constr. Corp.*, 460 US 1, 24-25 [1983]; *Thomas James Assoc., Inc. v Jameson*, 102 F3d 60, 65 [2d Cir 1996]).

On the other hand, arbitration is "a matter of consent, not coercion" (*Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.*, 489 US 468, 479 [1989]) and "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit" (*JLM Indus., Inc. v Stolt-Nielsen SA*, 387 F3d 163, 171 [2d Cir 2004] [internal quotation marks omitted]). Under the FAA, the determination as to whether the parties have entered into an agreement to arbitrate is made by applying ordinary state law principles governing the formation of contracts (*see First Options of Chicago, Inc. v Kaplan*, 514 US 938, 944 [1995]; *Perry v Thomas*, 482 US 483, 492 [1987]; *Chelsea Sq. Textiles, Inc. v Bombay Dyeing & Mfg. Co., Ltd.*, 189 F3d 289, 295 [2d Cir 1999]; *Progressive Cas. Ins. Co. v C.A. Reaseguradora Nacional De Venezuela*, 991 F2d 42, 45 [2d Cir 1993]; *Hayes v County Bank*, 26 AD3d 465, 466 [2006]).

Under both New York and Connecticut law, the intent of the parties governs when interpreting a contract (*compare God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP*, 6 NY3d 371, 374 [2006], *American Express Bank v Uniroyal*,

*Inc.*, 164 AD2d 275, 277 [1990], *and Sheets v Sheets*, 22 AD2d 176, 180 [1964], *with A. Dubreuil & Sons, Inc. v Town of Lisbon*, 215 Conn 604, 608, 577 A2d 709, 712 [1990], *and Hydro-Hercules Corp. v Gary Excavating, Inc.*, 166 Conn 647, 652, 353 A2d 714, 717 [1974]). In both states, to create a binding contract, there must be a meeting of the minds (*compare Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999], *with Fortier v Newington Group, Inc.*, 30 Conn App 505, 510, 620 A2d 1321, 1323 [1999]). Here, the defendants met their burden of demonstrating that the parties agreed to arbitrate.

The primary contracts reference the attached "General Conditions" page containing the broad arbitration clause, and the second contract specifically incorporated that page (*see Matter of Level Export Corp. [Wolz, Aiken & Co.]*, 305 NY 82, 87 [1953]; *Shah v Monpat Constr., Inc.*, 65 AD3d 541, 544 [2009]). Although the "General Conditions" pages were not independently signed, an arbitration agreement need not be signed so long as there is other proof that the parties intended to be bound by documents containing arbitration obligations (*see Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 370 [2005]; *Matter of Helen Whiting, Inc. [Trojan Textile Corp.]*, 307 NY 360, 368 [1954]). Such proof is present here, since Highland executed the primary contracts on the signature page, did not object to any of the language therein, accepted services and made payments pursuant thereto, and has now commenced an action alleging, among other things, breach of contract.

As the documents in the record evince an agreement to arbitrate, the Supreme Court should have granted that branch of the defendants' motion which was to compel the plaintiff to submit its claims against them to arbitration and stay all proceedings in this action pending arbitration (*see Ernest J. Michel & Co. v Anabasis Trade*, 50 NY2d 951 [1980]; *Matter of Level Export Corp. [Wolz, Aiken & Co.]*, 305 NY 82 [1953]; *Shah v Monpat Constr., Inc.*, 65 AD3d at 544; *Matter of ISPO, Inc. v Clark-Schwebel Fiber Glass Corp.*, 140 AD2d 195 [1988]).

Moreover, contrary to Highland's contention, the individual defendants, as officers and directors of PW Scott, are entitled to enforce the arbitration clause to the extent that their alleged misconduct relates to their behavior as agents of the professional corporation (*see Hirschfeld Prods. v Mirvish*, 88 NY2d 1054, 1056 [1996]).

In light of our determination with respect to the agreement to arbitrate, we need not address the defendants' contention concerning the plaintiff's claims for punitive damages. Skelos,

J.P., Balkin, Leventhal and Sgroi, JJ., concur. 