Revis v Schwartz (2020 NY Slip Op 08094)





Revis v Schwartz


2020 NY Slip Op 08094


Decided on December 30, 2020


Appellate Division, Second Department


Miller, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LEONARD B. AUSTIN
JEFFREY A. COHEN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2017-07940
 (Index No. 67097/16)

[*1]Darrelle Revis, et al., appellants,
v
Neil Schwartz, et al., respondents.



APPEAL by the plaintiffs, in an action, inter alia, to recover damages for breach of fiduciary duty, breach of contract, and fraud, from an order of the Supreme Court (Sam D. Walker, J.), dated June 7, 2017, and entered in Westchester County. The order granted the defendants' motion to compel arbitration and to stay the action pending completion of arbitration.



Krovatin Klingeman, LLC, New York, NY (Kristen M. Santillo and Williams & Connolly, LLP [Mark S. Levinstein, pro hac vice, James Norman Bierman, pro hac vice, and Charles Robert Jones, pro hac vice], of counsel), for appellants.
Satterlee Stephens LLP, New York, NY (Mario Aieta of counsel), for respondents.



MILLER, J.


OPINION & ORDER
When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. Under such circumstances and without more, a court possesses no authority to decide the arbitrability issue.
In this case, the defendants established, as a matter of law, that the plaintiff Darrelle Revis entered into an agreement with the defendant Neil Schwartz pursuant to which they agreed to arbitrate "gateway" questions of arbitrability. The defendants further established that, given the allegations in the complaint, the remaining parties to this lawsuit are bound by the same broad arbitration clause. Under these circumstances, the Supreme Court properly granted the defendants' motion to compel arbitration and to stay the action pending completion of the arbitration.
1. Factual and Procedural Background
A. Allegations in the Complaint
Revis and his corporate entity Shavae, LLC (hereinafter Shavae), commenced this action to recover damages for, among other things, breach of fiduciary duty, breach of contract, and fraud. The complaint alleged that Revis is a professional football player and that Shavae is a limited liability company that is wholly-owned by Revis. The complaint alleged that the defendant Schwartz & Feinsod, LLC (hereinafter S & F), is a business that provides legal services to professional football players. The complaint alleged that Schwartz is an attorney admitted to practice in the State of New York, and that he and the defendant Jonathan Feinsod are partners and co-owners of S & F.
The complaint alleged that in January 2007, Revis and Schwartz entered into a Standard Representation Agreement (hereinafter the SRA) in accordance with the National Football League Players Association Regulations Governing Contract Advisors (hereinafter the NFLPA Regulations). The complaint alleged that the SRA "provid[ed] that . . . Schwartz would represent [*2]. . . Revis as his attorney and contract advisor." Pursuant to the terms of the SRA, Revis agreed that Schwartz "would be his exclusive representative with respect to negotiating player contracts with NFL clubs." The SRA provided that Revis would pay Schwartz a certain percentage of the compensation that Revis earned under any NFL player contracts that were negotiated by Schwartz.
The complaint further alleged that on some unspecified date, Revis and Schwartz also entered into a separate oral agreement. The complaint alleged that "[t]he oral agreement provided that . . . Schwartz would provide a range of legal services to . . . Revis in return for a 10% contingent fee from amounts received by . . . Revis for marketing and endorsement agreements handled by . . . Schwartz on . . . Revis's [sic] behalf." The complaint alleged that the SRA was the only written agreement between Revis and Schwartz, and that the SRA contained the only memorialization of the terms of the alleged oral agreement. In this regard, the SRA indicated that Revis and Schwartz had entered into "separate agreements" and included, inter alia, the following description of the services covered by them: "Marketing & Endorsements - Ten (10%) Percent - Cash Only." The complaint alleged that "[w]hen Shavae was formed . . . Schwartz provided legal services to Shavae under the terms of his oral legal engagement agreement with . . . Revis."
The complaint asserted eight causes of action. Each of the causes of action was asserted by both Revis and Shavae, and the complaint alleged that both plaintiffs were entitled to the remedies requested for each cause of action. The first cause of action sought certain injunctive relief on behalf of both plaintiffs on the ground that Schwartz breached his fiduciary duty to them. The second cause of action sought money damages on behalf of both plaintiffs against all of the defendants for breach of fiduciary duty owed to the plaintiffs. The third cause of action sought, among other things, money damages against the defendants for fraud.
In the fourth cause of action the plaintiffs sought to recover, among other things, money damages against Schwartz for breach of contract. The fourth cause of action alleged that "[t]he agreement between . . . Schwartz and . . . Revis and Shavae concerning the provision of legal services in return for a 10% contingent fee on marketing and endorsement deals handled by . . . Schwartz and a 2% contingent legal fee on compensation from employment by National Football League teams was an enforceable contract." The plaintiffs alleged that "Schwartz committed a number of material breaches of the contract" and sought to recover, inter alia, "compensatory damages" for those breaches.
The fifth cause of action was asserted by the plaintiffs against all of the defendants. It alleged that, pursuant to the implied duty of good faith and fair dealing implied in every contract, "[the] Defendants were required to deal honestly with . . . Revis and Shavae." The complaint alleged that the defendants "violated the implied covenants of good faith and fair dealing" and, as a result, the plaintiffs were entitled to, among other relief, compensatory damages.
The sixth cause of action alleged unjust enrichment and was asserted by the plaintiffs against all of the defendants. This cause of action alleged that the defendants had been unjustly enriched by commissions which were paid "on various contracts wholly negotiated and signed after . . . Schwartz took fraudulent actions." In this regard, the complaint specifically cited to, among other contracts, Revis' "March 2015 contract with the New York Jets football club." The complaint alleged that the defendants were "all unjustly enriched" when they received commissions on these contracts as "Revis's [sic] and Shavae's funds would have otherwise gone to . . . Revis and Shavae."
The seventh cause of action was asserted by the plaintiffs against Schwartz. It alleged that Schwartz engaged in conversion and civil theft, and sought compensatory and punitive damages on behalf of the plaintiffs.
The eighth cause of action, sounding in fraudulent inducement, was also asserted by the plaintiffs against Schwartz. This cause of action alleged that Schwartz "represented to . . . Revis that he . . . would represent . . . Revis as his attorney, in order to convince . . . Revis to contract with [him] for his . . . services, and then . . . Schwartz represented that he would serve as counsel for Shavae, to represent Shavae as its attorney." The complaint alleged that Revis relied upon these representations, but that Schwartz never had any intention of serving as an attorney for either of the plaintiffs. As a result, the plaintiffs sought, among other relief, "a declaration that no further amounts are due to any of the Defendants from any of the Plaintiffs . . . and all other appropriate equitable relief, including rescissory damages, restitution, and rescission of all contracts or agreements between Plaintiffs and . . . Schwartz."
B. The Defendants' Motion to Compel Arbitration
The defendants subsequently moved pursuant to CPLR 7503 to compel arbitration [*3]of this matter and to stay all proceedings in the action pending arbitration. In support of their motion, the defendants submitted, inter alia, a copy of the complaint, a copy of the SRA entered into between Revis and Schwartz, a copy of the NFLPA Regulations, and a copy of the Labor Arbitration Rules of the American Arbitration Association (hereinafter the AAA Rules). In a memorandum of law submitted in connection with the motion, the defendants cited to separate arbitration provisions in the SRA and in the NFLPA Regulations, and argued, among other things, that "[t]he broad language of the binding arbitration provisions in the SRA and Regulations plainly cover [the plaintiffs'] claims here."[FN1] The defendants further argued that, by incorporating the AAA Rules into the NFLPA Regulations, the parties had agreed to delegate any threshold arbitrability questions to the arbitrator.
The plaintiffs opposed the defendants' motion. In a memorandum of law, the plaintiffs argued that the defendants' motion should be denied because they "failed to present sufficient evidence of a clear and unequivocal intent to arbitrate the claims at issue." The plaintiffs contended that their "legal claims . . . are wholly separate from the rights and duties created under the SRA." The plaintiffs asserted that their "claims arise from . . . Schwartz's separate agreement to provide other legal services to . . . Revis and his company, Shavae."
In the order appealed from, the Supreme Court granted the defendants' motion to compel arbitration and to stay the action pending completion of the arbitration. The court stated that "[i]t is clear . . . that the parties entered into a valid arbitration agreement and that the issues stated in the Summons and Complaint are encompassed within the SRA's broad arbitration clause." The court rejected the plaintiffs' contention "that the claims in this action are wholly separate from the rights and duties created under the SRA." The plaintiffs appeal.
2. General Legal Principles
A. Federal Law
The Federal Arbitration Act (9 USC § 1 et seq.; hereinafter the FAA) was enacted by Congress "in response to widespread judicial hostility to arbitration" (American Express Co. v Italian Colors Restaurant, 570 US 228, 232; see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 665). The purpose of the FAA is to "ensure judicial enforcement of privately made agreements to arbitrate" (Dean Witter Reynolds Inc. v Byrd, 470 US 213, 219; see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d at 665).
Under the FAA, an arbitration provision contained in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2). "This text reflects the overarching principle that arbitration is a matter of contract" and, "consistent with that text, courts must 'rigorously enforce' arbitration agreements according to their terms" (American Express Co. v Italian Colors Restaurant, 570 US at 233, quoting Dean Witter Reynolds Inc. v Byrd, 470 US at 221; see Rent-A-Center, West, Inc. v Jackson, 561 US 63, 67). Typically, "the FAA pre[e]mpts state laws [that] 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration'" (Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ., 489 US 468, 478, quoting Southland Corp. v Keating, 465 US 1, 10; see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d at 665).
B. New York State Law
The CPLR, in turn, provides that "[a] written agreement to submit any controversy . . . to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award" (CPLR 7501). "A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration" (CPLR 7503[a]). "If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made [*4]by motion in that action" (CPLR 7503[a]). With limited exception not applicable here, "[w]here there is no substantial question whether a valid agreement was made or complied with, . . . the court shall direct the parties to arbitrate" (CPLR 7503[a]; see Sutphin Retail One, LLC v Sutphin Airtrain Realty, LLC, 143 AD3d 972, 973). If the application for an order compelling arbitration is granted, "the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration" (CPLR 7503[a]).
Pursuant to this basic procedure, "the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration" (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 96). "Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended" (id. at 96). "Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration" (id.).
Accordingly, as a general matter, on a motion to compel or stay arbitration, a court must determine, "in the first instance . . . whether parties have agreed to submit their disputes to arbitration and, if so, whether the disputes generally come within the scope of their arbitration agreement" (Sisters of St. John the Baptist, Providence Rest Convent v Geraghty Constructor, 67 NY2d 997, 998; see Brown v Bussey, 245 AD2d 255, 255; cf. Green Tree Financial Corp.-Ala. v Randolph, 531 US 79, 90). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts" (First Options of Chicago, Inc. v Kaplan, 514 US 938, 944; see Arthur Andersen LLP v Carlisle, 556 US 624; Perry v Thomas, 482 US 483, 492).
However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" (Rent-A-Center, West, Inc. v Jackson, 561 US at 68-69; see First Options of Chicago, Inc. v Kaplan, 514 US at 943; Garthon Bus. Inc. v Stein, 30 NY3d 943, 944; Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d at 666). "This line of cases merely reflects the principle that arbitration is a matter of contract" (Rent-A-Center, West, Inc. v Jackson, 561 US at 69). In this regard, the United States Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence" (Henry Schein, Inc. v Archer & White Sales, Inc., _____ US _____, _____, 139 S Ct 524, 530, quoting First Options of Chicago, Inc. v Kaplan, 514 US at 944; see Rent-A-Center, West, Inc. v Jackson, 561 US at 69-70; AT & T Technologies, Inc. v Communications Workers of Am., 475 US 643, 649).
The United States Supreme Court has recently reiterated that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" (Henry Schein, Inc. v Archer & White Sales, Inc., _____ US at _____, 139 S Ct at 529 [2019; Unanimous Opinion by Kavanaugh, J.]). "In those circumstances, a court possesses no power to decide the arbitrability issue" (___ US at ___, 139 S Ct at 529). "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless" (___ US at ___, 139 S Ct at 529). In other words, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue" (___ US at ___, 139 S Ct at 530).
3. Legal Analysis
A. The Signatories
In support of their motion to compel arbitration, the defendants submitted a copy of the SRA that was entered into between Revis and Schwartz and which is referenced throughout the complaint. In the SRA, the parties agreed that Schwartz would act as Revis' exclusive Contract Advisor for purposes of the "negotiation, execution, and enforcement" of his National Football League playing contract. The SRA, which is a standard-form pre-printed contract, contained a space for the parties to list other agreements into which they had entered and, in that space, Revis and Schwartz noted that they had entered into an agreement regarding marketing and endorsements pursuant to which Schwartz would be entitled to a 10% contingent fee.
The SRA includes a paragraph titled "Disputes," which includes the following language: "Any and all disputes between Player and Contract Advisor involving the meaning, interpretation, application, or enforcement of this Agreement or the obligations of the parties under [*5]this Agreement shall be resolved exclusively through the arbitration procedures set forth in Section 5 of the NFLPA Regulations Governing Contract Advisors." The SRA incorporates the NFLPA regulations by reference and defines them to be a part of the parties' agreement.
As relevant here, Section 5 of the NFLPA Regulations contains a broadly worded arbitration clause that covers a wide variety of disputes. That section states that "[t]his arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from . . . (2) Any dispute between an NFL player and a Contract Advisor with respect to the conduct of individual negotiations by a Contract Advisor; (3) The meaning, interpretation or enforcement of a fee agreement; [or] (4) Any other activities of a Contract Advisor within the scope of these Regulations" (emphasis added).
A separate section sets forth the "Activities Covered" by the NFLPA Regulations. That section provides:
"The activities of Contract Advisors which are governed by these Regulations include: [1] the providing of advice, counsel, information or assistance to players with respect to negotiating their individual contracts with Clubs and/or thereafter in enforcing those contracts; [2] the conduct of individual compensation negotiations with the Clubs on behalf of players; [3] and any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations, including the handling of player funds, providing tax counseling and preparation services, and providing financial advice and investment services to individual players" (emphasis added).
The NFLPA regulations additionally set forth a "Standard of Conduct for Contract Advisors," which imposes duties on the Contract Advisor that go far beyond the negotiation of a player's individual contract with an NFL club. Specifically,
"A contract advisor shall be required to:
. . .
(6) Execute and abide by the printed [SRA] with all players represented and file with the NFLPA a copy of that fully executed agreement along with any other agreement(s) for additional services that the Contract Advisor has executed with the player, including, without limitation, agreements or other relevant documents relating to loans, lines of credit, or pre-combine or pre-draft services or benefits being provided to rookie clients
. . .
(9) Provide on or before May 1 each year, to every player who he/she represents, with a copy to the NFLPA, an itemized statement covering the period beginning March 1 of the prior year through February 28 or 29 of that year, which separately sets forth both the fee charges to the player for, and any expenses incurred in connection with the performance of the following services: (a) individual player salary negotiations, (b) management of the player's assets, (c) financial, investment, legal, tax and/or other advice to the player, and (d) any other miscellaneous services.
. . .
(17) Act at all times in a fiduciary capacity on behalf of players" (emphasis added).
Section 5 of the NFLPA Regulations sets forth the applicable arbitration procedure. That section provides that "[t]he [arbitration] hearing shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association." The AAA Rules, in turn, provide that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever, in a collective bargaining agreement or submission, they have provided for arbitration by the American Arbitration Association." The AAA Rules go on to specify, under the subdivision titled "Jurisdiction," that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." The AAA Rules also provide that "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties."
Applying, as we must, "ordinary state-law principles that govern the formation of contracts" generally (First Options of Chicago, Inc. v Kaplan, 514 US at 944), this Court must "examine and determine whether the parties here evinced a 'clear and unmistakable' agreement to arbitrate arbitrability as part of their alternative dispute resolution choice" (Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 46). Here, the SRA and the NFLPA regulations evidence a clear intent by Revis and Schwartz to arbitrate the threshold issue of arbitrability.
"Generally, all writings which are part of the same transaction are interpreted together" (11 Richard A. Lord, Williston on Contracts § 30:25 [4th ed 2020]). "One application of this principle is the situation in which the parties have expressed their intention to have one document's provision read into a separate document" (id.). "As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned" (id. [footnotes omitted]; see Restatement [Second] of Contracts § 132; 4 Corbin on Contracts § 23.3 [2020]).
These general contract principles have long been applied to arbitration provisions that were incorporated by reference into contracts (see e.g. Matter of Level Export Corp. [Wolz, Aiken & Co.], 305 NY 82, 86-87). As one prominent treatise states: "A finding of clear and unmistakable intent to arbitrate arbitrability may be inferred from the parties' incorporation in their agreement of rules making arbitrability subject to arbitration" (1 Domke on Commercial Arbitration § 15:11 [2020]).
The Court of Appeals has consistently enforced the rules of a particular arbitral forum where those rules were incorporated into the parties' agreement (see Garthon Bus. Inc. v Stein, 30 NY3d at 944; see also Matter of Smith Barney Shearson v Sacharow, 91 NY2d at 46-47). Where the rules that were incorporated into the parties' agreement provided that threshold arbitrability issues were to be resolved by the arbitrator, the Court of Appeals enforced that aspect of the parties' agreement and compelled the parties to submit "gateway" arbitrability issues to the arbitrator (see Garthon Bus. Inc. v Stein, 30 NY3d at 944 [applying the rules of the London Court of International Arbitration which were incorporated into the parties' final agreements]; see also Matter of Smith Barney Shearson v Sacharow, 91 NY2d at 46-47 [applying the rules of the National Association of Securities Dealers Code of Arbitration Procedure which were incorporated into the customer agreement]).
Here, it is undisputed that Revis and Schwartz entered into the SRA, thereby invoking the broad umbrella of the NFLPA regulations and the fiduciary duties created therein. Section 5 of the NFLPA Regulations, which contains a broadly worded arbitration clause, provides that "[t]he [arbitration] hearing shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association." The AAA Rules, in turn, grant the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." The SRA thus makes "clear reference" to Section 5 of the NFLPA Regulations, which, in turn, makes "clear reference" to the AAA Rules in such a way that the intent of the parties to incorporate those specific documents "may be ascertained beyond doubt" (11 Richard A. Lord, Williston on Contracts § 30:25 [4th ed 2020]).
It is not unusual for parties to incorporate AAA Rules into an agreement. A similar situation was presented to the First Department in Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's (66 AD3d 495). In that case, "[t]he arbitration agreement at issue require[d] that '[a]ll disputes and differences arising under or in connection with this [contract] . . . be referred to arbitration under the American Arbitration Association Rules'" (id.). "The AAA rules authorize[d] [*6]the arbitration tribunal to rule on its own jurisdiction, including objections with respect to the existence, scope or validity of the arbitration agreement" (id. at 495-496).
The First Department concluded that "[a]lthough the question of arbitrability is generally an issue for judicial determination, when the parties' agreement specifically incorporates by reference the AAA rules, which provide that '[t]he tribunal shall have the power to rule on its own jurisdiction, including . . . objections with respect to the existence, scope or validity of the arbitration agreement,' and employs language referring 'all disputes' to arbitration, courts will 'leave the question of arbitrability to the arbitrators'" (id. at 496).
The case was subsequently appealed to the Court of Appeals, which affirmed the First Department's order (see Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's, 14 NY3d 850, 851). The Court of Appeals concluded that "[t]he Appellate Division properly concluded that the scope and validity of the parties' arbitration agreement, including issues of arbitrability, are for the arbitration tribunal to determine" (id. at 851).
The Court of Appeals' determination in Life Receivables Trust is consistent with Appellate Division cases involving the incorporation of analogous rules of various arbitral forums (see Matter of WN Partner, LLC v Baltimore Orioles L.P., 179 AD3d 14, 16 [applying the "AAA Commercial Rules" that were incorporated into an arbitration clause and concluding that they "evince a clear and unmistakable intent to delegate the threshold arbitrability question . . . to the AAA"]; Skyline Steel, LLC v PilePro LLC, 139 AD3d 646, 646 [applying "JAMS" rules that were incorporated into an arbitration clause and concluding that they "confer on the arbitrators the power to resolve arbitrability"]; Matter of Gramercy Advisors LLC v J.A. Green Dev. Corp., 134 AD3d 652, 653 [applying "the rules of the American Arbitration Association" which were incorporated into an arbitration clause and concluding that they "provide for the arbitrator to determine arbitrability"]).
Numerous federal courts have similarly reviewed arbitration agreements that incorporated, by reference, virtually identical provisions of the American Arbitration Association (see Petrofac, Inc. v DynMcDermott Petroleum Operations Co., 687 F3d 671, 675 [5th Cir 2012]; Fallo v High-Tech Inst., 559 F3d 874, 878 [8th Cir 2009]; Qualcomm Inc. v Nokia Corp., 466 F3d 1366, 1373 [Fed Cir 2006]; Terminix Intl. Co., LP v Palmer Ranch Ltd. Partnership, 432 F3d 1327, 1332 [11th Cir 2005]; Contec Corp. v Remote Solution Co., Ltd., 398 F3d 205, 208 [2d Cir. 2005]). As one federal Circuit Court has recognized "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" (Oracle Am., Inc. v Myriad Group A.G., 724 F3d 1069, 1074 [9th Cir 2013] [collecting cases]; see Chesapeake Appalachia, LLC v Scout Petroleum, LLC, 809 F3d 746, 763-764 [3d Cir 2016] [same]).
The United States Court of Appeals for the Second Circuit, for example, when faced with an agreement incorporating rules of the American Arbitration Association which are indistinguishable from those at issue here, concluded that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator" (Contec Corp. v Remote Solution Co., Ltd., 398 F3d at 208).
In this case, by demonstrating that Revis and Schwartz incorporated the AAA Rules into the documents that collectively constitute their arbitration agreement, the defendants established "by 'clear and unmistakable' evidence" (Henry Schein, Inc. v Archer & White Sales, Inc., _____ US at _____, 139 S Ct at 530), that Revis entered into an agreement with Schwartz pursuant to which they agreed to arbitrate "gateway" questions of arbitrability (see Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's, 14 NY3d at 851; Matter of WN Partner, LLC v Baltimore Orioles L.P., 179 AD3d 14; Skyline Steel, LLC v PilePro LLC, 139 AD3d at 646; Matter of Gramercy Advisors LLC v J.A. Green Dev. Corp., 134 AD3d at 653; see also Contec Corp. v Remote Solution Co., Ltd., 398 F3d at 208).
Under these circumstances, neither the Supreme Court, nor this Court, nor any court, has the authority to decide whether and to what extent these parties' disputes are arbitrable (see Henry Schein, Inc. v Archer & White Sales, Inc.,_____ US at _____, 139 S Ct at 529). Indeed, just as a court may not "rule on the potential merits of the underlying" claim that is assigned by contract to an arbitrator, "even if it appears to the court to be frivolous" (AT & T Technologies, Inc. v Communications Workers, 475 US at 649-650), "a court may not decide an arbitrability question that the parties have delegated to an arbitrator" (Henry Schein, Inc. v Archer & White Sales, Inc.,_____ US at ______, 139 S Ct at 530), even if the court determines that "the argument that the arbitration [*7]agreement applies to the particular dispute is 'wholly groundless'" ( ____US at____, 139 S Ct at 528).
Given the foregoing, there is no occasion for this Court to apply the arbitration clause at issue here to the facts alleged in the complaint, or to otherwise determine whether the numerous causes of action asserted by Revis fall within its scope. Those questions were delegated to the arbitrator. It would thus be error to inquire into the scope of the arbitration agreement, under state and federal law (see e.g. Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's, 14 NY3d at 851; see also Henry Schein, Inc. v Archer & White Sales, Inc., ____ US at ____, 139 S Ct at 530; Contec Corp. v Remote Solution Co., Ltd., 398 F3d at 208). Under the circumstances, the Supreme Court properly granted that branch of the defendants' motion which was to compel arbitration of those portions of the complaint which were asserted by Revis against Schwartz, and to stay those portions of the action pending completion of arbitration.
Notwithstanding the well-established legal principles discussed above, the plaintiffs' appellate brief is largely devoted to parsing out the various causes of action that they have asserted and analyzing whether they come within the scope of their arbitration agreement. The plaintiffs contend that the arbitration clause contained in the SRA was limited solely to disputes involving the negotiation and execution of NFL playing contracts. In asserting this argument, the plaintiffs ignore the fact that this function—determining "gateway" questions of arbitrability—was delegated to the arbitrator.
B. The Nonsignatories
As previously indicated, "[a]rbitration is a matter of contract 'grounded in agreement of the parties'" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d 626, 630 [citation omitted], quoting County of Sullivan v Edward L. Nezelek, Inc., 42 NY2d 123, 128). Inasmuch as an arbitration clause is a contractual right, "the general rule is that only a party to an arbitration agreement is bound by or may enforce the agreement" (1 Domke on Commercial Arbitration § 13:1 [2020]; see Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 630; Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d 646, 648-649; Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d 621, 623).
The defendants nevertheless maintain that the nonsignatory defendants in the complaint, i.e. the named defendants that did not sign the SRA, are entitled to compel Revis, a party to that agreement, to binding arbitration in the same manner as Schwartz. Given the allegations in the complaint, we agree.
As this Court has recognized, "[a] nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate" (1 Domke on Commercial Arbitration § 13:1; see Degraw Constr. Group, Inc. v McGowan Bldrs., Inc., 152 AD3d 567, 569-570). "A non-party to an arbitration agreement may compel a party to arbitration if the relevant state contract law allows the non-party to enforce the arbitration agreement" (1 Domke on Commercial Arbitration § 13:1; see Hirschfeld Prods. v Mirvish, 88 NY2d 1054, 1056; Huntsman Intl. LLC v Albemarle Corp., 163 AD3d 420, 421; Degraw Constr. Group, Inc. v McGowan Bldrs., Inc., 152 AD3d at 570; Highland HC, LLC v Scott, 113 AD3d 590, 594; see also Arthur Andersen LLP v Carlisle, 556 US at 630).
Here, as noted earlier, the complaint alleged that the defendant Jonathan Feinsod is partners with Schwartz, and that they are co-owners of the defendant S & F. The complaint further alleged that "all of the [d]efendants are jointly and severally liable for the conduct of . . . Schwartz and Feinsod as detailed in this Complaint." The complaint also alleged that "Revis and Shavae agreed to be represented by . . . Schwartz and all work done by . . . Feinsod and [S & F] that related to . . . Revis and Shavae was done on behalf of . . . Schwartz."
The Court of Appeals has recognized that "Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation" (Hirschfeld Prods. v Mirvish, 88 NY2d at 1056, citing Pritzker v Merrill Lynch, Pierce, Fenner & Smith, 7 F3d 1110, 1121-1122 [3d Cir 1993], Roby v Corporation of Lloyd's, 996 F2d 1353, 1360 [2d Cir 1993], Arnold v Arnold Corp., 920 F2d 1269, 1281 [6th Cir 1990], and Letizia v Prudential Bache Sec., 802 F2d 1185, 1188 [9th Cir 1986]).
Adopting this rule, the Court of Appeals noted that "[t]he rule is necessary not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory [*8]parties to protect individuals acting on behalf of the principal in furtherance of the agreement" (Hirschfeld Prods. v Mirvish, 88 NY2d at 1056; see Degraw Constr. Group, Inc. v McGowan Bldrs., Inc., 152 AD3d at 570; Highland HC, LLC v Scott, 113 AD3d at 594; see also Matter of Groval Knitted Fabrics [Alcott], 31 NY2d 796, 798; see generally 1 Domke on Commercial Arbitration § 13:3 [2020]; but see Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d at 623).
Here, the allegations in the complaint which were made against S & F and Feinsod relate solely to work that "was done on behalf of . . . Schwartz." Given the allegations in the complaint, the nonsignatory defendants identified therein—Feinsod and S & F—were entitled to enforce the arbitration provisions contained in the SRA and the NFLPA Regulations (see Hirschfeld Prods. v Mirvish, 88 NY2d at 1055; Matter of Groval Knitted Fabrics, 31 NY2d at 798; Highland HC, LLC v Scott, 113 AD3d at 594). Accordingly, the Supreme Court properly granted that branch of the defendants' motion which was to compel arbitration of those portions of the complaint which were asserted by Revis against Feinsod or S & F, and to stay those portions of the action pending completion of arbitration.
Finally, the defendants contend that although Shavae is not a signatory to the SRA, it too is bound by the broad arbitration clause contained therein. The defendants are correct.
"Under the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 631; see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d 1138, 1141; see also MAG Portfolio Consultant, GMBH v Merlin Biomed Group LLC, 268 F3d 58, 61 [2d Cir 2001]). "The benefits must be direct, and the party seeking to compel arbitration must demonstrate that the party seeking to avoid arbitration relies on the terms of the agreement containing the arbitration provision in pursuing its claim" (Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d at 649-650; see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d at 1141; see generally 1 Domke on Commercial Arbitration § 13:11 [2020]).
Here, the complaint does not distinguish between the two plaintiffs in terms of the relief sought. In other words, Shavae seeks the same relief as Revis in each of the eight causes of action asserted in the complaint. Even assuming that Shavae is not an alter-ego of Revis (cf. 1 Domke on Commercial Arbitration § 13:7 [2020]), Shavae independently seeks to recover, under the fourth cause of action, damages for Schwartz's alleged breach of the SRA. In the sixth cause of action, the complaint alleges that Shavae is entitled to recover amounts that should have gone to it pursuant to the terms of the SRA and Shavae independently seeks to rescind the SRA and recover "rescissory damages."
Given the allegations in the complaint that Shavae was entitled to certain benefits under the SRA and that it was entitled to recover various types of damages due to Schwartz's alleged breach of that agreement, Shavae should be compelled to arbitrate in accordance with the arbitration clause contained in the SRA by application of the direct benefits theory of estoppel (see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d at 1142; BGC Notes, LLC v Gordon, 142 AD3d 435, 438; Mark Ross & Co., Inc. v XE Capital Mgt., LLC, 46 AD3d 296, 297; Matter of SSL Intl., PLC v Zook, 44 AD3d 429, 430; HRH Constr. LLC v Metropolitan Transp. Auth., 33 AD3d 568, 569). Accordingly, the Supreme Court properly granted that branch of the defendants' motion which was to compel arbitration of those portions of the complaint which were asserted by Shavae, and to stay those portions of the action pending completion of arbitration.
4. Conclusion
Under the circumstances and for the reasons given above, the Supreme Court properly granted the defendants' motion to compel arbitration and to stay the action pending completion of the arbitration.
Accordingly, the order is affirmed.
AUSTIN and CONNOLLY, JJ., concur.
ORDERED that the order is affirmed, with costs.
DILLON, J., dissents, and votes to reverse the order, on the law, and deny the defendants' motion to compel arbitration and to stay the action pending completion of the arbitration, with the following [*9]memorandum, in which COHEN, J., concurs:
The underlying facts, as summarized in the majority opinion, are not in dispute and need not be repeated here.
Paragraph 8 of the Standard Representation Agreement (hereinafter the SRA) between the parties incorporates by reference the procedures of Section 5 of the National Football League Players Association Regulations Governing Contract Advisors (hereinafter the NFLPA Regulations). The NFLPA Regulations, in turn, incorporate the Voluntary Labor Arbitration Rules of the American Arbitration Association (hereinafter the AAA Rules). Section 5(A)(2) and (A)(4) of the NFLPA Regulations provides that arbitration is the exclusive method for resolving disputes between NFL players and their Contract Advisors, such as Schwartz, and any other activities involving the Contract Advisor within the scope of "these Regulations." 
In my view, it is a misreading of the contract documents to draw a line from the SRA to the NFLPA Regulations to the AAA Rules, and then, upon examining them collectively, to conclude that the separate Marketing and Endorsement contract (hereinafter the M & E) must initially go to an arbitrator in the event of a dispute between the parties over the M & E. Notably, Paragraph 8 of the SRA only incorporates the arbitration procedures of the NFLPA Regulations to the extent of resolving disputes over the meaning, interpretation, application, or enforcement "of this Agreement," meaning the SRA only (emphasis added). By the plain language of the SRA, the NFLPA Regulations are not incorporated for the resolution of disputes that arise outside of the SRA. They could be incorporated for other agreements if the other agreements were to so provide, but here, the M & E was not in writing and, therefore, did not provide so. If the NFLPA Regulations do not extend to the M & E, then the terms of the AAA Rules are also not reached.
The limiting language of Paragraph 8 of the SRA—that the NFLPA Regulations apply to the arbitration of disputes involving "this Agreement"—is consistent with Paragraph 3(A) of the SRA, where the existence of the M & E is disclosed but expressly described as a "separate agreement," and Paragraph 3(B) of the SRA, which provides that the SRA was signed by Revis without being conditioned upon the signing of any other agreement. In other words, the reference to the M & E in Paragraph 3 was not to include it within the SRA, but to distinguish the M & E from the SRA, with each of the two contracts separate from the other, and the existence of one not conditioned upon the other. This is all the more reason that the NFLPA Regulations and AAA Rules, while incorporated by reference for the SRA, are not incorporated by reference in the SRA document for purposes of the M & E.
Revis maintains that Schwartz was acting as his attorney in regards to the M & E, which is relevant to the issue of whether the M & E was separate from the SRA. The attorney-client relationship was raised not only in Revis' own affidavit submitted to the Supreme Court, but also in affidavits from his business manager Diana Gilbert Askew, his tax advisor Martin Gargano, and Schwartz's former employee Zachary Hiller. Gargano's affidavit contained details about Schwartz's role as Revis' attorney. Hiller, who had been an employee of Schwartz at the relevant time, spoke from direct knowledge of Schwartz's attorney role in connection with the M & E deal with Healthy Beverage, LLC.
Instructive is the case of Rahman v Park (63 AD3d 812), which involved an operating agreement with an arbitration clause and a related side agreement containing no arbitration clause. The parties' dispute arose out of the side agreement, as here. Our Court, applying the standard rules of contract construction, held that when arbitration language in a contract is unambiguous, it is for the court to determine the parties' obligations (see id. at 814). Our Court also rendered a decision in Salmanson v Tucker Anthony Inc. (216 AD2d 283), wherein it was held that arbitration is only compelled where there exists a clear, unequivocal written agreement to do so. In determining whether a particular employment dispute between parties unambiguously falls within the scope of an arbitration provision, our Court held that the dispute must involve a "significant aspect" of the employment (id. at 284 [internal quotation marks omitted]), or as applicable to this appeal, a significant aspect of Revis' player contract. In Glauber v G & G Quality Clothing, Inc. (134 AD3d 898, 898), our Court held that "[a] party to an agreement will not be compelled to arbitrate, and thereby, to surrender the right to resort to courts, in the absence of evidence affirmatively establishing that the parties expressly agreed to arbitrate the dispute at hand," and that "'[t]he agreement to arbitrate must be express, direct, and unequivocal as to the issues or disputes to be submitted to arbitration'" (id. at 898, quoting Gangel v DeGroot, 41 NY2d 840, 841). Here, there [*10]is no "unambiguous" provision in the SRA that any disputes between the parties involving the M & E be arbitrated, particularly where there is at least a question of fact as to whether Schwartz's role in the M & E was that of an attorney rather than a Contract Advisor. In my view, the SRA speaks to the arbitration of disputes arising from "this Agreement" only, meaning the SRA. Any broad language in the NFLPA Regulations or AAA Rules that may be to the contrary, if reached at all, conflict with Paragraphs 3 and 8 of the SRA itself, rendering the issue, at best, ambiguous.
While I agree with my colleagues in the majority that parties may contractually agree to delegate issues of arbitrability through a "gateway" to an arbitrator (see Henry Schein, Inc. v Archer & White Sales, Inc., _____ US _____, 139 S Ct 524; Rent-A-Center, West, Inc. v Jackson, 561 US 63), the parties did not do so here in regard to their M & E. The gateway applies to an arbitrability dispute involving the SRA itself, as the gateway's existence relies upon the broad arbitrability provisions of the NFLPA Regulations and the AAA Rules. As noted above, however, the parties' separate M & E does not reach the NFLPA Regulations or the AAA Rules through the SRA at all, as (1) the NFLPA Regulations, which refer to the AAA Rules, are incorporated by reference only as to disputes involving "this Agreement,"(2) the M & E is distinguished and made separate from the SRA by virtue of SRA Paragraphs 3(A) and 3(B), and (3) the AAA Rules do not address gateway arbitrability but only involve matters once they have reached arbitration. In other words, reliance upon the NFLPA Regulations and the AAA Rules, to support the conclusion that arbitrability is solely for the arbitrator to decide, puts the cart (the NFLPA Regulations and AAA Rules) before the horse (the M & E). Schwartz ignores the plain language of the SRA that the parties' arbitrability is limited in Paragraph 8 to "this Agreement"—an issue that is central and dispositive to this appeal. The absence in Schwartz's responsive brief of any argument about the meaning of "this Agreement" is both curious and telling, as it was prominently argued in the plaintiffs' brief. Schwartz instead argues that Paragraph 5(A)(3) of the SRA is not "limited" to negotiations between players and teams and can extend to other agreements such as the M & E. But in doing so, Schwartz applies the law backwards. The obligation to arbitrate must be expressed clearly and unambiguously in the first instance, and cannot be found to exist for the M & E from any mere absence of language excluding arbitration from non-SRA matters.
Apart from the foregoing, the M & E, standing alone, is independently subject to the broad language of the NFLPA, requiring that the unwritten M & E document is subject to arbitrability. However, this point, having never been raised by any party before the Supreme Court, is therefore raised improperly for the first time on appeal (see McNamee Constr. Corp. v City of New Rochelle, 29 AD3d 544, 546; Xand Corp. v Reliable Sys. Alternatives Corp., 25 AD3d 795). 
An exception does exist, however, when an issue raised for the first time on appeal is an issue of law which could not have been avoided had it been raised below. For the exception to apply, the issue must be one of "pure" law untethered to any question of fact (see NYU Hosp. for Joint Diseases v Country Wide Ins. Co. 84 AD3d 1043, 1044-1045; Matter of Panetta v Carroll, 62 AD3d 1010; KPSD Mineola, Inc. v Jahn, 57 AD3d 853, 854; Matter of Matarrese v New York City Health & Hosps. Corp., 247 AD2d 475, 476). Here, the applicability of the NFLPA Regulations' arbitration provisions to the parties' unwritten M & E does not constitute a pure question of law. Section 5 of the NFLPA Regulations governs disputes between players and "Contract Advisors," which is a defined and understood term specific to professional sports. The direct applicability of the NFLPA Regulations to the M & E, independent of the SRA, must therefore presuppose that the relationship between Revis and Schwartz was that of Player and "Contract Advisor." However, as previously noted, Revis tendered affidavits from a variety of evidentiary sources demonstrating that the role of Schwartz in relation to the M & E was not that of a Contract Advisor, but of an attorney.
The Supreme Court erred in concluding that the issue of an attorney-client relationship was limited to Revis' own self-serving affidavit when, in actuality, there were multiple affidavits from persons with knowledge about Schwartz's alleged status as an attorney on the M & E, sufficient to raise a question of fact as to Schwartz's true role. The unwritten nature of the M & E underscores the factual ambiguity of Schwartz's role in connection with that agreement. Consequently, the direct application of Section 5 of the NFLPA Regulations to the M & E is not a pure question of law, as it is instead intertwined with and dependent upon the factual issue of whether Schwartz was acting as a Contract Advisor for the M & E subject to Section 5 arbitration or, alternatively, as an attorney not subject to NFLPA arbitration.
In any event, were this issue reached on the merits, the existence of such a question [*11]of fact, by which arbitrability is ambiguous, precludes our compelling an arbitration at this juncture and instead vests the Supreme Court with the obligation of determining whether the parties' dispute is arbitrable (see Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 45; Matter of Waldron [Goddess], 61 NY2d 181, 183; Matter of Kent Waterfront Assoc., LLC v National Union Fire Ins. Co. of Pittsburgh, 174 AD3d 712, 713; Blizzard Cooling, Inc. v Park Devs. & Bldrs., 134 AD3d 867, 868). Language in Section 1(B) of the NFLPA Regulations extending its provisions to "any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations," does not clearly and unmistakenly apply to disputes with individuals who may be acting as private attorneys for a player on matters unrelated to an NFL contract, such as an endorsement deal, a matrimonial litigation, a real estate transaction, or a speeding ticket.
Finally, the absence of an unambiguous arbitration agreement between Revis and Schwartz means that Shavae, LLC, Jonathan Feinsod, and the law firm of Schwartz & Feinsod, LLC, who were also named as defendants, are not subject to arbitration over the M & E.
For these reasons, the order appealed from should be reversed, on the law, with costs, and the defendants' motion to compel arbitration and to stay the action pending completion of an arbitration should be denied as to all parties.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: On appeal, the defendants likewise argue: "Revis, Schwartz and Feinsod are subject to two arbitration agreements: that found in the SRA and that found in the NFLPA Regulations." The parties do not contend that this issue is raised for the first time on appeal and therefore not properly before this Court.