P.S. Fin., LLC v Eureka Woodworks, Inc. (2023 NY Slip Op 00877)

P.S. Fin., LLC v Eureka Woodworks, Inc.

2023 NY Slip Op 00877

Decided on February 15, 2023

Appellate Division, Second Department

Connolly, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 15, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
LINDA CHRISTOPHER
WILLIAM G. FORD
BARRY E. WARHIT, JJ.

2019-08723 OPINION & ORDER
 (Index No. 150833/17)

[*1]P.S. Finance, LLC, etc., respondent,
v
Eureka Woodworks, Inc., defendant, Parker Law Firm, Ltd., et al., appellants.

APPEAL by the defendants Parker Law Firm, Ltd., and Timothy S. Parker, in an action, inter alia, to recover damages for breach of contract, commenced by motion for summary judgment in lieu of complaint pursuant to CPLR 3213, from an order of the Supreme Court (Orlando Marrazzo, Jr., J.), dated December 14, 2017, and entered in Richmond County. The order, insofar as appealed from, sua sponte, directed the defendants Parker Law Firm, Ltd., and Timothy S. Parker to arbitrate the claims against them, and, in effect, denied, as academic, the motion of the defendants Parker Law Firm, Ltd., and Timothy S. Parker pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against them for lack of personal jurisdiction and those branches of the cross-motion of the defendants and nonparty Harry Wilk which were for summary judgment dismissing the action insofar as asserted against the defendants Parker Law Firm, Ltd., and Timothy S. Parker or, in the alternative, to dismiss the action insofar as asserted against the defendants Parker Law Firm, Ltd., and Timothy S. Parker for lack of personal jurisdiction. Justice Warhit has been substituted for former Justice Roman (see 22 NYCRR 1250.1[b]).

Richard A. Rosenzweig, Staten Island, NY, for appellants.
Raul J. Sloezen, Yonkers, NY, for respondent.

Connolly, J.P.

DECISION & ORDER
This appeal presents novel questions related to jurisdiction, as well as arbitration and forum selection provisions in agreements. The first question is whether, upon reviewing an agreement and determining that an arbitration provision governs, a court should, sua sponte, direct the parties to arbitrate. We hold that a court should not direct parties to arbitrate absent a request from one of the parties.
The second question requires us to examine the circumstances under which non-signatories to an agreement containing a forum selection provision may be bound by that provision consistent with due process. We hold that non-signatories to an agreement may be bound by that agreement's forum selection provision when they are signatories to a related agreement, which forms part of the same transaction, and are closely related to both the transaction and one of the signatories to the agreement containing the forum selection provision.
I. Factual and Procedural Background
The defendant Eureka Woodworks, Inc. (hereinafter Eureka), was a Texas corporation, located in Texas, and was in the business of designing and manufacturing beach furniture and wooden advertising displays. On April 20, 2010, the Deepwater Horizon oil rig spilled large quantities of oil into the Gulf of Mexico. Eureka alleged that its revenue and profits decreased due to the effects the oil spill had on the hotel industry along the Gulf of Mexico. As a result, Eureka [*2]filed a claim for damages with the Gulf Coast Claims Facility (hereinafter the GCCF). The defendant Timothy S. Parker and his law firm, the defendant Parker Law Firm, Ltd. (hereinafter the Parker Law Firm; hereinafter together with Parker the attorney defendants), as well as nonparty Watts Guerra, LLP (hereinafter Watts Guerra), represented Eureka in connection with its claim with the GCCF.
The plaintiff, P.S. Finance, LLC (hereinafter PSF), was a New York limited liability company in the business of advancing funding to plaintiffs in litigation, including personal injury litigation and commercial claims. According to PSF, in exchange for the funds that PSF advanced to plaintiffs in litigation, the plaintiffs agreed to pay a portion of the potential proceeds of their litigation to PSF. However, if the plaintiffs did not recover money from their litigation, then the plaintiffs were not obligated to pay PSF.
On March 14, 2012, PSF and Eureka entered into an agreement entitled "Plaintiff's Agreement to Pay Proceeds Contingent on Successful Settlement, Judgment or Verdict and Receipt of Proceeds: Agreement to Assign Proceeds" (hereinafter the Agreement to Pay). The Agreement to Pay defined Eureka as the "Plaintiff." Pursuant to the Agreement to Pay, PSF agreed to provide the total sum of $120,250 to Eureka in connection with the "Litigation," a term which was defined to include Eureka's claim with the GCCF and any other related actions or claims. In section 2 of the Agreement to Pay, Eureka agreed to repay PSF the sum advanced, plus specified interest, from the proceeds of the settlement, judgment, and/or verdict in the Litigation. However, the next sentence provided that "PSF is to be paid only if such proceeds are received through settlement, judgment or verdict." Section 3(b) provided that "in the event there is no recovery from settlement, judgment or verdict in the [Litigation], [Eureka] will owe no money to PSF and [Eureka] shall have no liability whatsoever to PSF."
The Agreement to Pay provided that it was governed by New York law. Section 9 of the Agreement to Pay contained a forum selection clause, providing that Eureka acknowledged and agreed that "all disputes that arise concerning the terms, conditions, interpretation or enforcement of this agreement shall be determined in a Court of competent jurisdiction in New York."
Section 10 of the Agreement to Pay provided that "[a]ny controversy or claim arising out of or relating to this contract, including without limitation the interpretation, validity, enforceability or breach thereof, shall be settled by final, binding arbitration administered by the American Arbitration Association in accordance with its commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."
In section 14, PSF and Eureka agreed that the Agreement to Pay, Eureka's "Irrevocable Grant of Lien, Assignment of Proceeds and Lien Payment Instructions" (hereinafter the Irrevocable Lien), and the "Attorney Acknowledgment of Explanation of Terms to Plaintiff of Irrevocable Lien and Assignment" to PSF (hereinafter the Attorney Acknowledgment) "constitute the entire agreement of the parties hereto." The Agreement to Pay was signed by a representative of PSF and by Harry Wilk, the president of Eureka.
In the Irrevocable Lien, Eureka granted PSF an irrevocable assignment of its "settlement, verdict and/or judgment proceeds in connection with" the Litigation. The Irrevocable Lien further provided that Eureka authorized and directed its attorney, Parker, to pay PSF in accordance with the terms of the Agreement to Pay, the Irrevocable Lien, and the Attorney Acknowledgment. Wilk signed the Irrevocable Lien on behalf of Eureka on March 14, 2012.
The first sentence of the Attorney Acknowledgment provided that the undersigned attorney for Eureka acknowledged receipt of the Agreement to Pay and the Irrevocable Lien. In the next sentence, the attorney agreed to distribute any proceeds of the "Litigation," a term which was defined to include Eureka's claim with the GCCF and any other related actions or claims, in accordance with the terms of all agreements signed by Eureka in favor of PSF. The Attorney Acknowledgment provided that:
"[t]he balance of the proceeds of the Litigation, IF ANY, shall not be paid to [Eureka], unless and until [Eureka's] Irrevocable Lien to PSF is satisfied in full. . . . In the event of any settlement or structured settlement, no funds shall be distributed to [Eureka]. . . , until such time as the total amount due has been paid in full from the proceeds of the Litigation. I hereby consent and agree to fully execute this document to pay [PSF] all funds due them at the close of this case, before final distribution to [*3][Eureka]."
The Attorney Acknowledgment further provided that the "ATTORNEY ACKNOWLEDGES THAT I HAVE REVIEWED THE CONTRACT AND EXPLAINED TO [EUREKA] THE TERMS CONTAINED THEREIN, INCLUDING, BUT NOT LIMITED TO, THE ANNUALIZED RATE OF RETURN SET FORTH IN THE DISCLOSURE STATEMENT ON PAGE 1 OF [THE AGREEMENT TO PAY]." On March 14, 2012, Parker signed the Attorney Acknowledgment before a notary public in Arkansas. Wilk signed the Attorney Acknowledgment on behalf of Eureka.
In April 2017, PSF commenced this action in the Supreme Court, Richmond County, against Eureka and the attorney defendants by summons and motion for summary judgment in lieu of complaint pursuant to CPLR 3213. PSF alleged that, in exchange for $120,250, Eureka and the attorney defendants assigned to PSF a portion of the proceeds of Eureka's claim with the GCCF, and despite Eureka and the attorney defendants receiving settlement funds from the GCCF, they failed to pay PSF its portion of the proceeds. In an attorney affirmation in support of its motion, PSF requested that the court grant PSF summary judgment on its causes of action based on breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty in handling trust funds. Attached to the affirmation was the Agreement to Pay, the Irrevocable Lien, and the Attorney Acknowledgment, as well as receipts for wire payments totaling $120,000 from PSF to Eureka, an email from Wilk with an attached letter from the GCCF dated January 13, 2012, offering Eureka a final payment of $376,016.44 on its claim, and an email exchange between Maria Franco of Watts Guerra and Carmen DeSantis of PSF, in which Franco described Eureka's receipt of two payments from the GCCF, one on April 9, 2012, in the amount of $176,727.73, and another on May 3, 2012, in the amount of $137,595.14 (hereinafter the subject payments).
On May 12, 2017, Eureka and the attorney defendants opposed PSF's motion for summary judgment in lieu of complaint, and submitted, among other things, affidavits from Wilk, Parker, and Mikal Watts, an attorney with Watts Guerra, as well as a memorandum of law [FN1]. In their affidavits, Wilk, Parker, and Watts averred, among other things, that the subject payments were emergency or "interim payments" from the GCCF. However, they averred that neither of the subject payments stemmed from any "judgment, settlement or verdict," that Eureka never received a settlement, judgment, or verdict in its favor in connection with the Litigation, and that Eureka's claim for damages arising from the Deepwater Horizon oil spill was ultimately denied because Eureka was located outside the geographic area eligible for compensation under the program.
In his affidavit, Parker additionally averred that neither of the attorney defendants were a party to the agreement between PSF and Eureka. He also averred that he was not licensed to practice law in New York, and that neither he individually, nor the Parker Law Firm, owned any property in New York, had any clients in New York, or had any offices in New York. Parker further averred that, in the last 35 years, he had only been in New York once, for a couple of hours, for a connecting flight. Eureka and the attorney defendants' joint memorandum of law argued, among other things, that the attorney defendants did not consent to personal jurisdiction in New York, as Eureka was the only entity that consented to the choice of New York as the forum in section 9 of the Agreement to Pay, the attorney defendants lacked sufficient minimum contacts with New York, and, therefore, the action should be dismissed insofar as asserted against the attorney defendants for lack of personal jurisdiction. Also on May 12, 2017, the attorney defendants moved pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against them for lack of personal jurisdiction, raising the same contentions as those raised in opposition to PSF's motion for summary judgment in lieu of complaint.
In June 2017, PSF moved pursuant to CPLR 1001(a) to add Wilk as an additional defendant and for summary judgment in lieu of complaint (hereinafter the second motion for summary judgment in lieu of complaint). By notice of cross-motion dated July 10, 2017, Eureka, the attorney defendants, and Wilk (hereinafter collectively the defendants) opposed the second motion for summary judgment in lieu of complaint and cross-moved, inter alia, for summary [*4]judgment dismissing the action insofar as asserted against all defendants or, in the alternative, to dismiss the action insofar as asserted against the attorney defendants and Wilk for lack of personal jurisdiction (hereinafter the cross-motion). In support of the cross-motion, the defendants contended that they were not obligated to make any payments to PSF, and attached, among other things, a copy of an interim payment determination letter from the GCCF dated April 9, 2012, a copy of an interim payment determination letter from the GCCF dated May 3, 2012, and a copy of the notice denying Eureka's claim. They also contended that the Supreme Court had no personal jurisdiction over the attorney defendants.[FN2]
By order dated December 14, 2017, the Supreme Court, inter alia, quoting section 10 of the Agreement to Pay, determined that it did not have jurisdiction, sua sponte, directed the parties to arbitrate, directed dismissal of the action, and, in effect, denied, as academic, the attorney defendants' motion and the cross-motion. The attorney defendants filed a notice of appeal from the order. We deem the notice of appeal from so much of the order as, sua sponte, directed the attorney defendants to arbitrate the claims against them to be an application for leave to appeal from that portion of the order, and grant leave to appeal (see CPLR 5701[a][2]; [c]; Sholes v Meagher, 100 NY2d 333, 335; Citibank, N.A. v Kerszko, 203 AD3d 42, 48).
II. The Direction to Arbitrate
On appeal, the attorney defendants point out that no party had sought arbitration at the time the Supreme Court, sua sponte, directed arbitration, and as such, they contend that this sua sponte directive was improper. The attorney defendants further contend that PSF waived any potential right to arbitrate by commencing this action, and in any event, the attorney defendants are not bound by the arbitration provision in the Agreement to Pay. We agree that the court should not have, sua sponte, directed the attorney defendants to arbitrate the claims against them.
Initially, contrary to the Supreme Court's determination, "the mere existence of an arbitration clause in the contract [does] not . . . authorize dismissal of the action. Only an arbitration and award would warrant such a dismissal" (BR Ambulance Serv. v Nationwide Nassau Ambulance, 150 AD2d 745, 746; see generally Lischinskaya v Carnival Corp., 56 AD3d 116, 122 [rejecting contention that the jurisdiction of the court can be divested by a term of the contract between the parties]). There is no provision of the CPLR that requires a court to direct arbitration based upon the existence of what the court believes to be an applicable arbitration provision covering the subject matter of the action, absent a request from one of the parties to arbitrate (see CPLR art 75; Sabr Chems. Group, LLC v Northeast Chems., Inc., 192 AD3d 647, 648; Nachman v Jenelo Corp., 25 AD3d 593; BR Ambulance Serv. v Nationwide Nassau Ambulance, 150 AD2d at 746).[FN3]
Likewise, for contracts governed by the Federal Arbitration Act (9 USC § 1 et seq.; hereinafter the FAA), there is no provision in the statute that requires a court to sua sponte enforce an arbitration provision [FN4]. The United States Supreme Court has held that the FAA "does not [*5]mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements" (Dean Witter Reynolds, Inc. v Byrd, 470 US 213, 219 [emphasis added]). Numerous federal courts considering the issue have also held that sua sponte directions to arbitrate are improper (see Automobile Mechs. Local 701 Welfare and Pension Funds v Vanguard Car Rental USA, Inc., 502 F3d 740, 746 [7th Cir]; Lation v Fetner Props., Inc., 2017 WL 6550691, *2-3, 2017 US Dist LEXIS 211082, *5-7 [SD NY, No. 17CV3276 (JPO)]; PRL USA Holdings, Inc. v United States Polo Ass'n, Inc., 2015 WL 1442487, *3 n 2, 2015 US Dist LEXIS 40238, *9 n 2 [SD NY, No. 14CV764 (RJS)]; Amiron Dev. Corp. v Sytner, 2013 WL 1332725, *3, 2013 US Dist LEXIS 47033, *8-10 [ED NY, No. 12CV30369 (JS)(ETB)]; Matter of Arbitration Between Std. Tallow Corp. & Kil-Mgt. A/S, 901 F Supp 147, 151 [SD NY]; see also Lefkowitz v Reissman, 2014 WL 925410, *8, 2014 US Dist LEXIS 30845, *23-24 [SD NY, No. 12CV8703 (RA)] [although the defendants had not yet made a formal motion to compel arbitration, their motion to dismiss presented the issue and both parties had the opportunity to brief the issue]).
We likewise hold that a court should not direct arbitration absent a request from one of the parties to arbitrate. To be sure, both New York and federal policy favor arbitration (see Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 66; Gerling Global Reins. Corp. v Home Ins. Co., 302 AD2d 118, 125; see also Louis Dreyfus Negoce S.A. v Blystad Shipping & Trading Inc., 252 F3d 218, 224 [2d Cir]). In our view, however, a policy favoring arbitration does not authorize courts to create special rules to promote arbitration (see Morgan v Sundance, Inc., _____ US _____, _____, 142 S Ct 1708, 1713 ["a court may not devise novel rules to favor arbitration over litigation"]).
Instead, the right to arbitrate is a matter of contract, and courts should enforce arbitration provisions as they would enforce contractual rights generally (see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 665; Sablosky v Gordon Co., 73 NY2d 133, 136; see also Revis v Schwartz, 192 AD3d 127, 133, affd 38 NY3d 939). "[L]ike contract rights generally, a right to arbitration may be modified, waived or abandoned" (Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d at 66 [internal quotation marks omitted]; see Cusimano v Schnurr, 26 NY3d 391, 400; Matter of Zimmerman [Cohen], 236 NY 15, 19; Matter of Village of Bronxville v Bronxville Police Taylor Act Comm., 171 AD3d 932, 934). A litigant waives arbitration when its conduct is "clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration" (Cusimano v Schnurr, 26 NY3d at 400 [internal quotation marks omitted]).
In this case, we are satisfied that PSF's conduct established its waiver of the rights it otherwise may have had to arbitrate this dispute against the attorney defendants [FN5]. First, PSF chose to commence this action instead of seeking to enforce the arbitration provision in the Agreement to Pay. "[T]he party who commences an action may generally be assumed to have waived any right it may have had to submit the issues to arbitration" (De Sapio v Kohlmeyer, 35 NY2d 402, 405; see Willer v Kleinman, 114 AD3d 850, 852; Hart v Tri-State Consumer, Inc., 18 AD3d 610, 612). [*6]Second, PSF did not move to compel arbitration or even mention the arbitration provision of the Agreement to Pay in its papers in support of its motion for summary judgment in lieu of complaint. Then, more than two months later, PSF moved to add an additional defendant and made a second motion for summary judgment in lieu of complaint. Yet PSF still failed to request arbitration (see Tengtu Intl. Corp. v Pak Kwan Cheung, 24 AD3d 170, 171-172; Hart v Tri-State Consumer, Inc., 18 AD3d at 612; cf. Preiss/Breismeister Architects v Westin Hotel Co.-Plaza Hotel Div., 56 NY2d 787, 789; Byrnes v Castaldi, 72 AD3d 718, 720 [no waiver where, among other things, the defendants repeatedly raised the issue of arbitration before the court]). Indeed, up until the time the Supreme Court decided the parties' motions and cross-motion, no party had ever requested or even mentioned arbitration (see Sabr Chems. Group, LLC v Northeast Chems., Inc., 192 AD3d 647, 648 [the plaintiff waived any right to seek arbitration by commencing and proceeding to litigate in the plenary action and never seeking to compel arbitration]; Hart v Tri-State Consumer, Inc., 18 AD3d at 612).
On appeal, PSF contends that it did not waive the right to arbitrate because it resorted to litigation merely to seek protective relief to preserve the status quo pending arbitration. We acknowledge that "[n]ot every foray into the courthouse effects a waiver of the right to arbitrate" (Sherrill v Grayco Bldrs., 64 NY2d 261, 273; see Cusimano v Schnurr, 26 NY3d at 400). "[W]here urgent need to preserve the status quo requires some immediate action which cannot await the appointment of arbitrators, waiver will not occur" (Sherrill v Grayco Bldrs., 64 NY2d at 273). However, PSF's contention that urgency required it to commence this action by summary judgment in lieu of complaint fails to explain why, after it commenced the action, PSF did not then take any action to demand arbitration in response to the attorney defendants' motion or the cross-motion or in the eight months before the Supreme Court made its sua sponte directive to arbitrate (see Hyde v Jewish Home Lifecare, 149 AD3d 674 [the defendant waived arbitration where, among other things, the defendant did not move to compel arbitration until approximately four months after the commencement of the plaintiff's action]).
Contrary to PSF's contention, commencing an action by summary judgment in lieu of complaint does not immunize a plaintiff from a finding that it waived whatever rights it had to arbitration. Relatedly, PSF's reliance upon Barbi v Hutton & Co. (53 AD2d 562, 563) is misplaced. In Barbi v Hutton & Co., the plaintiff commenced the action by summary judgment in lieu of complaint, the defendant raised the arbitration provision of an agreement between the parties as a bar to the action, and the majority held that the Supreme Court properly stayed the action pending arbitration because the arbitration provision was applicable (see id. at 563). Thus, Barbi v Hutton & Co. simply addressed whether the arbitration provision governed the dispute (see id.). The issue of waiver was not discussed at all.
To the extent that PSF contends that our waiver analysis should take into account the parties' conduct after the Supreme Court's sua sponte directive to arbitrate, we disagree. Even if it were appropriate to take judicial notice of the parties' submissions in connection with a motion made by the attorney defendants to vacate the court's December 14, 2017 order (see Caffrey v North Arrow Abstract & Settlement Servs., Inc., 160 AD3d 121, 127), the denial of which is the subject of the related appeal decided herewith (see P.S. Finance, LLC v Eureka Woodworks, Inc., _____ AD3d _____ [Appellate Division Docket No. 2019-13095]), the parties' subsequent conduct has no bearing on the court's determination to direct arbitration in December 2017. Specifically, PSF's purported demand to arbitrate, made after the court's directive, does not change the fact that PSF had waived the right to arbitrate before the court's directive. "Once waived, the right to arbitrate cannot be regained" (Matter of Village of Bronxville v Bronxville Police Taylor Act Comm., 171 AD3d at 934; see Sherrill v Grayco Bldrs., 64 NY2d at 274).
Accordingly, the Supreme Court should not have, sua sponte, directed the attorney defendants to arbitrate. Because we hold that PSF waived whatever rights it had to arbitrate this dispute with the attorney defendants (see Hart v Tri-State Consumer, Inc., 18 AD3d at 612), we do not decide whether the attorney defendants would be bound by the arbitration provision in the Agreement to Pay.
In light of its determination, the Supreme Court did not consider the merits of the attorney defendants' motion pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against them for lack of personal jurisdiction, or those branches of the cross-motion which were for summary judgment dismissing the action insofar as asserted against the attorney defendants or, in the alternative, to dismiss the action insofar as asserted against the attorney defendants for lack of [*7]personal jurisdiction. Since PSF and the attorney defendants fully briefed the merits of the issues raised on the attorney defendants' motion and the cross-motion, we consider those issues in the interest of judicial economy (see Yu v New York City Health & Hosps. Corp., 191 AD3d 1040; Bonafede v Bonito, 145 AD3d 842, 843; Dockery v Sprecher, 68 AD3d 1043, 1046; Wright v Meyers & Spencer, LLP, 46 AD3d 805, 805).[FN6]
III. Personal Jurisdiction
The attorney defendants contend that New York courts do not have personal jurisdiction over them because they lack sufficient minimum contacts with New York. Although the attorney defendants acknowledge that Eureka consented to jurisdiction in New York by signing the Agreement to Pay, the attorney defendants contend that the Attorney Acknowledgment Parker signed did not contain any consent to jurisdiction in New York, and therefore, they are not bound by the New York forum selection provision in the Agreement to Pay.[FN7]
PSF contends that the attorney defendants are bound by the forum selection clause in the Agreement to Pay, and, in any event, the attorney defendants waived the defense of lack of personal jurisdiction by litigating this action on the merits.
We begin with an analysis of when a defendant waives the defense of lack of personal jurisdiction by participating in the action on the merits. "A defendant may waive the issue of lack of personal jurisdiction by appearing in an action, either formally or informally, without raising the defense of lack of personal jurisdiction in an answer or pre-answer motion to dismiss" (US Bank N.A. v McGown, 200 AD3d 826, 827 [internal quotation marks omitted]; see U.S. Bank N.A. v Cadoo, 197 AD3d 588, 589). "A person who participates in the merits of an action appears informally and confers jurisdiction on the court" (U.S. Bank N.A. v Cadoo, 197 AD3d at 589 [internal quotation marks omitted]).
Here, the attorney defendants' first participation in the action was to raise the defense of lack of personal jurisdiction in their opposition to PSF's motion for summary judgment in lieu of complaint (see Cadlerock Joint Venture, L.P. v Kierstedt, 119 AD3d 627, 628-629; see also Gurary v Light, 248 AD2d 507, 508; cf. Vernon v Winikoff, 182 AD2d 753, 754). On the same date, the attorney defendants moved pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against them based upon lack of personal jurisdiction. Further, on June 23, 2017, counsel for PSF entered into a stipulation with counsel for the defendants stating that nothing contained in the stipulation nor anything previously filed in the case shall be deemed a waiver of the defense of lack of personal jurisdiction with respect to the attorney defendants.
Although the defendants subsequently cross-moved for summary judgment dismissing the action and challenged the merits of PSF's underlying claims, the attorney defendants continued to contend that New York courts lacked personal jurisdiction over them. Thus, contrary to PSF's contention, the attorney defendants did not waive the defense of lack of personal jurisdiction by participating in the defense of this action (see Dinicu v Groff Studios Corp., 215 AD2d 323, 323 [once a jurisdictional defense is raised in an answer to the complaint, it is deemed timely asserted, and defendants do not waive the defense by, among other things, seeking discovery or participating in the defense of the action]; Bank Hapoalim v Kotten Mach. Co. of Brooklyn, 151 AD2d 374, 376 [where the defendant interposed the defense of lack of personal jurisdiction in the first papers filed on his behalf, his subsequent participation in the action was not a waiver of his jurisdictional defense because the defendant repeatedly and ardently renewed the jurisdictional objection during the course of the litigation]; Turkish v Turkish, 126 AD2d 436, 439 [the defendant did not waive his objection [*8]to lack of personal jurisdiction by actively defending on the merits and cross-moving for affirmative relief]; Calloway v Natl. Servs. Indus., 93 AD2d 734, 735, affd 60 NY2d 906 [the defendant, by simply defending on the merits and seeking discovery, did not expressly or impliedly waive its jurisdictional objection]; Chemical Bank v Cakepan, Inc., 72 AD2d 515, 516 [where the answer contained a defense of lack of personal jurisdiction, that objection was preserved notwithstanding participation in the defense of the action]; Schneikraut v Gerges Realty Corp., 24 AD2d 991, 991 [the defendant did not waive the objection of lack of personal jurisdiction by raising such a defense in his answer, by contesting on the merits the plaintiffs' motion for summary judgment, and by serving his motion for leave to serve an amended answer]; see also Lischinskaya v Carnival Corp., 56 AD3d at 119 [where the defense of lack of personal jurisdiction was raised in the answer, the defendant's participation in the litigation did not waive the defense afforded by the forum selection clause]; Williams v Uptown Collision, 243 AD2d 467, 467 [participation in discovery did not waive defense of lack of personal jurisdiction]; cf. Textile Tech. Exch. v Davis, 81 NY2d 56, 59 [the assertion of an unrelated counterclaim results in a waiver of the defense of lack of personal jurisdiction]).
"When a defendant objects to the court's exercise of personal jurisdiction, the ultimate burden of proof rests upon the plaintiff" (Lowy v Chalkable, LLC, 186 AD3d 590, 591; see Sutton v Houllou, 191 AD3d 1031, 1033). "In opposing a motion to dismiss the complaint pursuant to CPLR 3211(a)(8) on the ground of lack of jurisdiction, a plaintiff need only make a prima facie showing that such jurisdiction exists" (Skutnik v Messina, 178 AD3d 744, 744-745 [internal quotation marks omitted]). "The facts alleged in the complaint and affidavits in opposition to such a motion to dismiss are deemed true and construed in the light most favorable to the plaintiff, and all doubts are to be resolved in favor of the plaintiff" (Lowy v Chalkable, LLC, 186 AD3d at 591 [internal quotation marks omitted]).
"[T]here are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court" (Burger King Corp. v Rudzewicz, 471 US 462, 474 n 14 [internal quotation marks omitted]). For example, parties to a contract may agree in advance to submit to the jurisdiction of a given court through a forum selection clause (see id. at 472 n 14; National Equip. Rental, Ltd. v Szukhent, 375 US 311, 316; Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534; Banco do Commercio e Industria de Sao Paolo v Esusa Engenharia e Construcoes, 173 AD2d 340, 341). "This is the case even where a party lacks sufficient minimum contacts with the forum state" (General Electric Intl., Inc. v Thorco Shipping Am., Inc., 2022 WL 1748410, *5, 2022 US Dist LEXIS 97093, *13-15 [SD NY, No. 21CV6154 (JPC)]). Thus, where a defendant enters into an agreement containing a forum selection clause, it is not necessary to conduct a separate analysis of whether the exercise of personal jurisdiction over the defendant comports with constitutional requirements of due process (see Oberon Sec., LLC v Titanic Entertainment Holdings LLC, 198 AD3d 602, 603; Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d 116, 123; Oak Rock Fin., LLC v Rodriguez, 148 AD3d 1036, 1038; see also Burger King Corp. v Rudzewicz, 471 US at 472 n 14; Securities & Exch. Commn. v Hurgin, 484 F Supp 3d 98, 115 [SD NY] ["a valid and enforceable forum selection clause renders the ordinary statutory and constitutional personal jurisdiction analysis unnecessary" (internal quotation marks omitted)]). The question in this case is whether the attorney defendants have consented to personal jurisdiction in New York by virtue of the forum selection provision in the Agreement to Pay.
Although, in general, only parties to a contract are bound by its terms (see Sherrod v Mount Sinai St. Luke's, 204 AD3d 1053, 1056; Sutton v Houllou, 191 AD3d at 1034; Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d at 121; Bernstein v Wysoki, 77 AD3d 241, 251; Freeford Ltd. v Pendleton, 53 AD3d 32, 38), a non-signatory may be bound by a forum selection clause in a contract under certain limited circumstances. Those limited circumstances include where the non-signatory is a third-party beneficiary or an alter ego of a signatory or where the non-signatory is a party to another related agreement that forms part of the same transaction (see Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d at 122; Oak Rock Fin., LLC v Rodriguez, 148 AD3d at 1038; May v US HIFU, LLC, 98 AD3d 1004, 1006; see also Indosuez Intl. Fin. v National Reserve Bank, 98 NY2d 238, 247). In addition, a forum selection clause may be enforced against a non-signatory under the "'closely related'" doctrine "'where the non-signatory and a party to the agreement have such a "close relationship" that it is foreseeable that the forum selection clause will be enforced against the [*9]non-signatory'" (Sutton v Houllou, 191 AD3d at 1034, quoting Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d at 122).
Here, although the attorney defendants did not sign the Agreement to Pay, which contained the New York forum selection provision, we nevertheless hold that the attorney defendants are bound by that provision because the Agreement to Pay and the Attorney Acknowledgment are related agreements that are part of the same transaction (see Oak Rock Fin., LLC v Rodriguez, 148 AD3d at 1038). The Agreement to Pay, Attorney Acknowledgment, and the Irrevocable Lien obviously relate to the same subject matter—PSF's funding of Eureka's claim with the GCCF (see 131 Heartland Blvd. Corp. v C.J. Jon Corp., 82 AD3d 1188, 1190). All three documents were executed on the same date. The Agreement to Pay, the Attorney Acknowledgment, and the Irrevocable Lien all refer to each other in multiple places. Further, as the attorney defendants correctly point out on appeal, the Attorney Acknowledgment was numbered pages 13 and 14, which seemingly continues the consecutive numbering of the Agreement to Pay and the Irrevocable Lien.
The Agreement to Pay expressly references the intent that all three documents be considered one agreement. In Section 3(c), PSF agreed to invest in Eureka's claim and to pay Eureka the specified amount "on the basis of the execution of this Agreement, [EUREKA'S] AGREEMENT TO PAY . . . ; [EUREKA'S] IRREVOCABLE GRANT OF LIEN; and ATTORNEY ACKNOWLEDGMENT . . . (collectively, the "Agreements") all of which are incorporated herein by this reference and made part hereof, as the price for the purchase of the proceeds from [Eureka]." Section 14 expressly states that the Agreement to Pay, the Irrevocable Lien, and the Attorney Acknowledgment constitute the "entire agreement of the parties hereto."[FN8]
Further, the attorney defendants had such a close relationship to Eureka and the transaction with PSF that it was foreseeable that the forum selection clause would be enforced against the attorney defendants (see Oberon Sec., LLC v Titanic Entertainment Holdings LLC, 198 AD3d at 603; Sutton v Houllou, 191 AD3d at 1034; Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d at 124; Tate & Lyle Ingredients Ams., Inc. v Whitefox Tech. USA, Inc., 98 AD3d 401, 403). The Attorney Acknowledgment required the attorney defendants to distribute any proceeds of the Litigation in accordance with the terms of all agreements signed and notarized by Eureka in favor of PSF. The undersigned attorney agreed that the "balance of the proceeds of the Litigation" shall not be paid to Eureka "unless and until" the Irrevocable Lien was "satisfied in full."
In this case, PSF seeks to enforce the attorney defendants' obligation to pay PSF the "proceeds" of the Litigation as provided in the Attorney Acknowledgment, and alleges that the attorney defendants breached that contractual obligation. In fact, as will be discussed below, with respect to urging dismissal of the breach of contract claim insofar as asserted against them, the attorney defendants contend that their obligation to pay PSF under the Attorney Acknowledgment must be construed in connection with the Agreement to Pay. Thus, the attorney defendants' alleged conduct is closely related to the contractual relationship between Eureka and PSF, as set forth in the Attorney Acknowledgment, the Agreement to Pay, and the Irrevocable Lien (see Cambridge Mgt. Group, LLC v Baker, 2013 WL 1314734, *9-11, 2013 US Dist LEXIS 44055, *27-36 [DNJ, No. 12CV3577 (NLH/KMW)]).
Significantly, by signing the Attorney Acknowledgment, Parker expressly acknowledged receipt of the Agreement to Pay, as well as the Irrevocable Lien. The Attorney Acknowledgment provided that the "ATTORNEY ACKNOWLEDGES THAT I HAVE REVIEWED THE CONTRACT AND EXPLAINED TO [EUREKA] THE TERMS CONTAINED THEREIN." Accordingly, the attorney defendants were aware of all of the terms in the Agreement to Pay, including the forum selection provision (see id.; see also Doyle v P.A. Sports Authenticator, 76 Misc 3d 38, 42 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists] [the terms on the reverse side of the agreement, which included a forum selection clause, were sufficiently called to the attention [*10]of the plaintiff, an attorney]). It was therefore foreseeable that the forum selection provision would be enforced against the attorney defendants.
We reject the attorney defendants' contention that they are not bound by the forum selection provision in the Agreement to Pay because it stated that the "Plaintiff acknowledges and agrees" to litigate in New York, and "Plaintiff" was defined in the Agreement to Pay as Eureka. As the attorney defendants themselves acknowledge, the Attorney Acknowledgment is "part of" the agreement with PSF. Further, another court interpreting similar language in a litigation funding agreement and attorney acknowledgment concluded that the attorney defendants in that case were bound by the forum selection clause in the funding agreement, despite the clause only referencing the "plaintiff" (see Cambridge Mgt. Group, LLC v Baker, 2013 WL 1314734, *9-11, 2013 US Dist LEXIS 44055, *27-36; see also US Claims v Baker, 2012 WL 6725826, *3-7, 2012 US Dist LEXIS 182015, *11-23 [DNJ, No. 12CV2231 (NLH/AMD)]).
Indeed, our holding in this case is consistent with the holdings of federal district courts in New Jersey and Pennsylvania addressing whether attorney defendants are bound by the forum selection clauses in litigation funding agreements under substantially similar circumstances (see Lawyers Funding Group, LLC v White, 2015 WL 921588, *3-6, 2015 US Dist LEXIS 26146, *8-18 [ED Pa, No. 14CV2962 (RBS)]; Cambridge Mgt. Group, LLC v Baker, 2013 WL 1314734, *9-11, 2013 US Dist LEXIS 44055, *27-36; US Claims v Baker, 2012 WL 6725826, *3-7, 2012 US Dist LEXIS 182015, *11-23). Those courts considered it significant that, as here, the attorney acknowledgments, which were signed by the attorney defendants in those cases, expressly acknowledged receipt of the clients' litigation funding agreements and agreed to distribute the proceeds of the underlying litigations in accordance with the terms of all agreements signed by their clients (see e.g. Cambridge Mgt. Group, LLC v Baker, 2013 WL 1314734, *9-10, 2013 US Dist LEXIS 44055, *27-33). Further, as here, the litigation funding agreements incorporated the attorney acknowledgments by reference and provided that all of the individual documents collectively constituted the agreement between the parties (see e.g. Cambridge Mgt. Group, LLC v Baker, 2013 WL 1314734, *10, 2013 US Dist LEXIS 44055, *30-33). Thus, in those cases, as here, it was foreseeable that the attorney defendants would be bound by the forum selection clauses in the funding agreements (see e.g. Lawyers Funding Group, LLC v White, 2015 WL 921588, *6, 2015 US Dist LEXIS 26146, *16-17).
This is not a case where the attorney defendants had no involvement in their client's litigation funding agreement, did not sign the attorney acknowledgment, and only began representing the client after the client entered into the litigation funding agreement (see Prospect Funding Holdings, LLC v Vinson, 256 F Supp 3d 318, 326 [SD NY] [holding that in such circumstances the attorney was not sufficiently closely related to the client to be bound by the forum selection clause in the litigation funding agreement]; Lawyers Funding Group, LLC v Harris, 2016 WL 233669, *7, 2016 US Dist LEXIS 6650, *23-26 [ED Pa, No. 14CV6369 (JRS)] [same]). Nor is this a case where outside counsel merely provided due diligence or an opinion (see Leviton Mfg. Co., Inc. v Reeve, 942 F Supp 2d 244, 258-259 [ED NY]).
We are aware that the United States District Court for the District of Nebraska recently concluded that attorney defendants who signed an attorney acknowledgment were not bound by the New York forum selection provision in their client's litigation funding agreement with a different litigation funding provider, Prospect Funding Holdings (NY), LLC (hereinafter Prospect Funding), because those attorney defendants were not parties to the litigation funding agreement (see Prospect Funding Holdings [NY] LLC v Ronald J. Palagi, P.C., LLC, 2022 WL 903453, *1, 5, 2022 US Dist LEXIS 55665, *2-4, 12-13 [D Neb, No. 8:18CV15 (JMG)]). The litigation funding agreement at issue in that case was governed by New York law, and the District Court for the District of Nebraska was persuaded by a decision of the Appellate Division, First Department (see Prospect Funding Holdings, LLC v Paiz, 183 AD3d 486, 487), which also involved Prospect Funding and apparently "identical" documents to those at issue in the District of Nebraska case (see Prospect Funding Holdings [NY] LLC v Ronald J. Palagi, P.C., LLC, 2022 WL 903453, *2, 2022 US Dist LEXIS 55665, *4-6).
The First Department case, however, did not address whether the attorney defendants in that case were bound by a forum selection provision in their client's litigation funding agreement (see Prospect Funding Holdings, LLC v Paiz, 183 AD3d 486). Instead, the First Department held, among other things, that the breach of contract cause of action was properly dismissed insofar as asserted against those attorney defendants because the relevant documents did not identify those [*11]attorney defendants as parties and did not impose upon them any obligations to Prospect Funding (see id. at 487). Likewise, in Plaintiff Funding Holding, Inc. v Ugochukwu (74 Misc 3d 68 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists]), the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth Judicial Districts held, among other things, that the attorney defendants in that case were entitled to summary judgment dismissing the breach of contract cause of action insofar as asserted against them because the attorney acknowledgment, irrevocable letter of instruction, and funding agreement in that case did not identify those attorney defendants as parties and did not impose upon them any contractual obligations to the litigation funding provider in that case, Plaintiff Funding Holding, Inc., doing business as Law Cash (hereinafter Law Cash) (see id., citing Prospect Funding Holdings, LLC v Paiz, 183 AD3d 486).
Although the Prospect Funding documents, as well as the Law Cash documents, appear to be similar to those at issue in this case, there is no indication that they are identical to those signed by Eureka and Parker. In this case, the Attorney Acknowledgment did impose express obligations to PSF upon the attorney defendants, including to "distribute any proceeds of the Litigation" in accordance with the terms of all agreements signed and notarized by Eureka in favor of PSF. It further stated that the attorney defendants assumed "no duties or obligations to [PSF] other than the ministerial duties of disbursement and of furnishing requested information" (emphasis added). Although the attorney defendants contend that this language establishes that they did not have sufficient contractual obligations to PSF and so precludes a finding that they are bound by the forum selection provision in the Agreement to Pay, the plain meaning of that language is that the attorney defendants did assume a duty to PSF (cf. Prospect Funding Holdings, LLC v Paiz, 183 AD3d at 487; Plaintiff Funding Holding, Inc. v Ugochukwu, 74 Misc 3d at 71)[FN9]. In any event, to the extent that the documents in this case are sufficiently similar to those at issue in Prospect Funding Holdings, LLC v Paiz (183 AD3d 486), Plaintiff Funding Holding, Inc. v Ugochukwu (74 Misc 3d 68), and Prospect Funding Holdings (NY) LLC v Ronald J. Palagi, P.C., LLC (2022 WL 903453, 2022 US Dist LEXIS 55665), and our holding conflicts with the decisions in those cases, we respectfully disagree with them.
It is true that some federal courts have criticized the closely related doctrine, holding that it does not satisfy principles of due process (see Gordian Med., Inc. v Misty Vaughn and Curitec, LLC, 2022 WL 1443917, *6, 2022 US Dist LEXIS 82669, *14-17 [D Del, No. 22CV319 (MN/SRF)], report and recommendation adopted sub nom. Gordian Med., Inc. v Vaughn, 2022 WL 1624124, 2022 US Dist LEXIS 91837 [D Del, No. 22CV319 (MN/SRF)]; Mersen USA EP Corp. v TDK Elecs. Inc., 594 F Supp 3d 570, 583-584; Truinject Corp. v Nestlé Skin Health, S.A., 2019 WL 6828984, *11, 2019 US Dist LEXIS 215313, *27-30 [D Del, No. 19CV592 (LPS/JLH)]; Arcadia Biosciences, Inc. v Vilmorin & Cie, 356 F Supp 3d 379, 395 [SD NY]; Guaranteed Rate, Inc. v Conn, 264 F Supp 3d 909, 926 [ND Ill])[FN10]. Those courts raise concerns that an emphasis on foreseeability alone does not comport with due process (see Gordian Med., Inc. v Misty Vaughn and Curitec, LLC, 2022 WL 1443917, *7, 2022 US Dist LEXIS 82669, *17-20; Guaranteed Rate, Inc. v Conn, 264 F Supp 3d at 926; cf. Burger King Corp. v Rudzewicz, 471 US at 474 ["the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there" (internal quotation marks omitted)]). Although we share the concern that application of the closely related doctrine in some cases may not comport with due process, in our [*12]view, it is not necessary to wholly reject the application of the closely related doctrine to bind non-signatory defendants in every case.
We emphasize that in this case, our holding that the attorney defendants are bound by the forum selection provision in the Agreement to Pay rests upon the attorney defendants' close relationship to both Eureka and the transaction with PSF, as well as our determination that the Agreement to Pay, the Irrevocable Lien, and the Attorney Acknowledgment are related agreements. We are thus satisfied that enforcement of the forum selection provision against the attorney defendants does not offend "traditional notions of fair play and substantial justice" as required by the Federal Due Process Clause (International Shoe Co. v Washington, 326 US 310, 316 [internal quotation marks omitted]; see Oak Rock Fin., LLC v Rodriguez, 148 AD3d at 1038). Accordingly, under the totality of the circumstances in this case, the attorney defendants are bound by the forum selection provision in the Agreement to Pay, and the attorney defendants' motion to dismiss the action insofar as asserted against them for lack of personal jurisdiction, and that branch of the defendants' cross-motion which was to dismiss the action insofar as asserted against the attorney defendants for lack of personal jurisdiction, should have been denied on the merits.
IV. The Merits of PSF's Claims Against the Attorney Defendants
Nevertheless, turning to the merits of PSF's claims against the attorney defendants, we hold that the defendants established entitlement to summary judgment dismissing the causes of action insofar as asserted against the attorney defendants.
A. Breach of Contract
PSF contends that the attorney defendants agreed in the Attorney Acknowledgment to distribute to PSF "any proceeds" that Eureka received from its claim with the GCCF. According to PSF, the subject payments were "proceeds" within the meaning of the Attorney Acknowledgment, and the attorney defendants breached the Attorney Acknowledgment by failing to distribute the proceeds of the subject payments to PSF.
By contrast, the attorney defendants contend that they were only obligated to distribute any proceeds to PSF under the Attorney Acknowledgment in accordance with the terms of the Agreement to Pay, which they contend was conditioned upon Eureka's receipt of a settlement, judgment, or verdict in the Litigation. Although the attorney defendants acknowledge that Eureka received the subject payments, they contend that those payments were only interim payments and were not a "settlement" under the terms of the Attorney Acknowledgment and the Agreement to Pay. As Eureka did not receive a "settlement," the attorney defendants' obligation to pay "any proceeds" to PSF was never triggered and the attorney defendants did not breach any agreement with PSF. We agree.
"A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (A.D.E. Sys., Inc. v Quietside Corp., 188 AD3d 762, 763 [internal quotation marks omitted]; see Greenfield v Philles Records, 98 NY2d 562, 569). An agreement "is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Goodale v Central Suffolk Hosp., 210 AD3d 956, 957; see Donohue v Cuomo, 38 NY3d 1, 13; Greenfield v Philles Records, 98 NY2d at 569). Where the agreement "was negotiated between sophisticated, counseled business people negotiating at arm's length," "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [internal quotation marks omitted]; see Donohue v Cuomo, 38 NY3d at 12; 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d 372, 381). "Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d at 381 [internal quotation marks omitted]).
Further, "a condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises'" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645, quoting Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 690). The Court of Appeals has recognized that the use of terms such as "if," "unless," and "until" constitute "unmistakable language of condition" (see MHR Capital Partners LP v Presstek, Inc., 12 NY3d at 645; Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d at 691). "Express conditions must be literally performed; substantial performance will not suffice" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d at 645).
Pursuant to the terms of the Attorney Acknowledgment, the attorney defendants agreed to "distribute any proceeds of the Litigation . . . and any other related actions or claims in accordance with the terms of all Agreements signed and notarized by [Eureka] in favor of [PSF]" (emphasis added). Initially, we reject PSF's contention that the phrase "any proceeds" in the Attorney Acknowledgment should be construed without reference to the Agreement to Pay [FN11]. Based upon the plain meaning of the full sentence, it is necessary to look to the terms of the Agreement to Pay—an agreement signed and notarized by Eureka in favor of PSF—to determine whether the attorney defendants had an obligation to distribute any proceeds to PSF. Further, as we have already explained, the Agreement to Pay and the Attorney Acknowledgment are related agreements, and as such, should be construed together (see Nationstar Mtge., LLC v Hoar, 209 AD3d 864; County of Suffolk v Long Is. Power Auth., 100 AD3d 944, 947; cf. Prospect Funding Holdings, LLC v Paiz, 183 AD3d at 487).
Section 2 of the Agreement to Pay provided that "[i]n accordance with this Agreement, [Eureka] shall repay PSF from the proceeds of the settlement, judgment and/or verdict in [its] case. PSF is to be paid only if such proceeds are received through settlement, judgment or verdict" (emphasis added). Section 3(a) of the Agreement to Pay provided that "[i]n consideration of PSF agreeing to purchase proceeds prior to settlement, judgment or verdict of [Eureka's] action, [Eureka] instructs [its] counsel to pay PSF in accordance with" the Agreement to Pay. Section 3(b) of the Agreement to Pay provided that "in the event there is no recovery from settlement, judgment or verdict in the [Litigation], [Eureka] will owe no money to PSF and [Eureka] shall have no liability whatsoever to PSF." Thus, under the plain meaning of the terms of the Attorney Acknowledgment and the Agreement to Pay, Eureka's receipt of a "settlement, judgment or verdict" in the Litigation was a condition precedent to the attorney defendants' obligation to pay PSF.
In support of their cross-motion for summary judgment dismissing the action, the defendants established, prima facie, that Eureka did not receive any proceeds through "settlement, judgment or verdict" in the Litigation. Their submissions established that by letter dated January 13, 2012, Eureka received a settlement offer of $376,016.44 from the GCCF. Wilk averred that he expected Eureka to receive a much higher amount, and therefore, Eureka rejected this settlement offer. Instead, Eureka opted for a re-review of its claim to the GCCF. While Eureka's claim to the GCCF was pending, the GCCF issued the subject payments, which were "interim payments," a term defined under the GCCF Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology (hereinafter the GCCF Rules), and which the GCCF made because Eureka ostensibly qualified under the GCCF's Rules. However, according to the GCCF Rules, Eureka was not required to execute a release or surrender any litigation rights in order to accept interim payments. By contrast, a "final payment" under the GCCF Rules provided compensation to the claimant for all documented past damage plus estimated future damage due to the oil spill, resolved the claimant's entire claim for any and all past and future damages, and required a claimant to sign a release precluding the claimant from seeking further compensation from the GCCF, the Coast Guard, or in court from any defendant allegedly responsible for the oil spill [FN12]. Ultimately, the GCCF was closed while Eureka's claim for a final payment was pending and the GCCF's successor denied Eureka's claim because Eureka was outside of the geographic eligibility zone. Wilk, Parker, and Watts all averred that Eureka never obtained a settlement, judgment, or verdict in the Litigation.
In opposition, PSF failed to raise a triable issue of fact. Eureka's acceptance of the subject payments, without any evidence that it surrendered any litigation rights in order to accept the subject payments, is insufficient to raise a triable issue of fact that the express condition that Eureka receive a "settlement" was satisfied (see Glassberg v Lee, 82 AD3d 836, 837 [the plaintiff's acceptance of a check did not constitute an accord and satisfaction where, among other reasons, the plaintiff was not clearly informed that acceptance of the amount would settle or discharge the purported claim]; Francis v Rycroft, 148 App Div 65, 68 ["As commonly understood, the word 'settlement' involves a finality. To 'settle' a debt means to discharge it. Part payment does not amount to a settlement unless the debt is discharged"]; Polipo v Sanders, 170 Misc 2d 833, 835 [Sup Ct, Bronx County], affd 245 AD2d 2 [payment by the defendant's insurance company pursuant to a judgment did not terminate the dispute between the plaintiff and the defendant, as the plaintiff did not agree to forego any part of his claim against the defendant]; see also 19A NY Jur 2d, Compromise, Accord, and Release § 32 ["Payment is distinguished from accord and satisfaction, and from compromise and settlement"]; Black's Law Dictionary [11th ed 2019], settlement ["An agreement ending a dispute or lawsuit"]).[FN13]
B. Breach of the Implied Covenant of Good Faith and Fair Dealing
PSF contends that the attorney defendants breached the implied covenant of good faith and fair dealing because the intent of the Attorney Acknowledgment and the Agreement to Pay was to pay PSF any proceeds of the Litigation and the attorney defendants did not have the right to decide that PSF was not entitled to the subject payments. The attorney defendants contend that the cause of action alleging breach of the implied covenant of good faith and fair dealing is barred by a three-year statute of limitations and, in any event, the cause of action alleging breach of the implied covenant of good faith and fair dealing is duplicative of the cause of action alleging breach of contract.
Contrary to the attorney defendants' contention, the cause of action alleging breach of the implied covenant of good faith and fair dealing is not barred by the statute of limitations, as that cause of action is governed by a six-year statute of limitations (see Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 403; Aozora Bank, Ltd. v Credit Suisse Group, 144 AD3d 437, 440), not a three-year statute of limitations. Nevertheless, we hold that the attorney defendants are entitled to summary judgment dismissing the cause of action alleging breach of the covenant of good faith and fair dealing insofar as asserted against them.
"Implicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included" (25 Bay Terrace Assoc., L.P. v Public Serv. Mut. Ins. Co., 144 AD3d 665, 667 [internal quotation marks omitted]; see Celauro v 4C Foods Corp., 187 AD3d 836, 838; Gutierrez v Government Empls. Ins. Co., 136 AD3d 975, 976). "'The implied covenant of good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct'" (25 Bay Terrace Assoc., L.P. v Public Serv. Mut. Ins. Co., 144 AD3d at 667, quoting Gutierrez v Government Empls. Ins. Co., 136 AD3d at 976). However, no obligation may be implied that would be inconsistent with other terms of the contractual relationship (see Celauro v 4C Foods Corp., 187 AD3d at 838; 1357 Tarrytown Rd. Auto, LLC v Granite Props., LLC, 142 AD3d 976, 977).
Here, the defendants' submissions established, prima facie, that the cause of action alleging breach of the covenant of good faith and fair dealing insofar as asserted against the attorney defendants should be dismissed as duplicative of the cause of action alleging breach of contract (see Celauro v 4C Foods Corp., 187 AD3d at 836; Clogher v New York Med. Coll., 112 AD3d 574, 575; Staffenberg v Fairfield Pagma Assoc., L.P., 95 AD3d 873, 875). In opposition, PSF failed to raise a triable issue of fact. Contrary to PSF's contentions, the attorney defendants' refusal to distribute [*13]any proceeds of the subject payments to PSF was not a discretionary matter under the Agreement to Pay and the Attorney Acknowledgment. Instead, as described above, Eureka's receipt of any proceeds through settlement, judgment, or verdict was an express condition precedent to the attorney defendants' obligation to distribute any proceeds to PSF. Implying an obligation for the attorney defendants to pay proceeds of the subject payments to PSF, even though those subject payments were not received through a "settlement, judgment or verdict" in the Litigation, would imply an obligation that is inconsistent with the terms of the Agreement to Pay and the Attorney Acknowledgment (see Murphy v American Home Prods. Corp., 58 NY2d 293, 304-305; Celauro v 4C Foods Corp., 187 AD3d at 836; Staffenberg v Fairfield Pagma Assoc., L.P., 95 AD3d at 875; 767 Third Ave. LLC v Greble & Finger, LLP, 8 AD3d 75, 75). There is no evidence that the attorney defendants sought to prevent the performance of a contract, or to withhold the benefits of a contract from PSF (see Lee Dodge, Inc. v Sovereign Bank, N.A., 148 AD3d 1007, 1008; Michaan v Gazebo Hort., Inc., 117 AD3d 692, 693; Aventine Inv. Mgt. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 514; cf. Elmhurst Dairy, Inc. v Bartlett Dairy, Inc., 97 AD3d 781, 784).
C. Breach of Fiduciary Duty
Finally, PSF contends that the attorney defendants breached their fiduciary duty to PSF by failing to notify it that Eureka had obtained the subject payments and failing to distribute the proceeds of the subject payments to PSF. PSF further contends that its breach of fiduciary duty claim is not barred by the applicable three-year statute of limitations based upon the doctrine of equitable estoppel, as its submissions demonstrate that for five years, the attorney defendants misrepresented that Eureka had not received any payments from the GCCF. However, we need not decide the applicability of equitable estoppel since the defendants established that the breach of fiduciary duty cause of action insofar as asserted against the attorney defendants should be dismissed (see Village of Kiryas Joel v County of Orange, 144 AD3d 895, 899; JMF Consulting Group II, Inc. v Beverage Mktg. USA, Inc., 97 AD3d 540, 542; Layden v Boccio, 253 AD2d 540, 541; see also Prospect Funding Holdings, LLC v Paiz, 183 AD3d at 488).
To establish a prima facie case for breach of fiduciary duty, a plaintiff must allege "'(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct'" (Varveris v Zacharakos, 110 AD3d 1059, 1059, quoting Rut v Young Adult Inst., Inc., 74 AD3d 776, 777; see Village of Kiryas Joel v County of Orange, 144 AD3d at 898). "A cause of action alleging breach of fiduciary duty is subject to dismissal where it is duplicative of a cause of action alleging breach of contract" (Village of Kiryas Joel v County of Orange, 144 AD3d at 898).
Here, the defendants established, prima facie, that the terms of the Agreement to Pay and the Attorney Acknowledgment "covered the precise subject matter of the alleged fiduciary duty" between the attorney defendants and PSF, and thus, that claim was duplicative of the breach of contract claim (see JMF Consulting Group II, Inc. v Beverage Mktg. USA, Inc., 97 AD3d at 542; Pane v Citibank, N.A., 19 AD3d 278, 279). In opposition, PSF failed to raise a triable issue of fact.
V. Conclusion
In the absence of a request from one of the parties, the Supreme Court should not have directed the attorney defendants to arbitrate, and instead, should have decided the merits of the attorney defendants' motion and the cross-motion. We hold that the attorney defendants' motion to dismiss the action insofar as asserted against them for lack of personal jurisdiction, and that branch of the defendants' cross-motion which was to dismiss the action insofar as asserted against the attorney defendants for lack of personal jurisdiction, should be denied, as the attorney defendants are bound by the forum selection provision in the Agreement to Pay. However, that branch of the defendants' cross-motion which was for summary judgment dismissing the action insofar as asserted against the attorney defendants should be granted, as the defendants established as a matter of law that the attorney defendants did not breach the terms of the Attorney Acknowledgment or the Agreement to Pay. Furthermore, the breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty causes of action insofar as asserted against the attorney defendants should be dismissed as duplicative of the breach of contract cause of action.
Accordingly, on the Court's own motion, the notice of appeal from so much of the order as, sua sponte, directed the attorney defendants to arbitrate the claims against them is deemed to be an application for leave to appeal from that portion of the order, and leave to appeal is granted (see CPLR 5701[c]), the order is reversed insofar as appealed from, on the law, the motion of the attorney defendants pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against [*14]them for lack of personal jurisdiction and that branch of the defendants' cross-motion which was to dismiss the action insofar as asserted against the attorney defendants for lack of personal jurisdiction are denied on the merits, and that branch of the defendants' cross-motion which was for summary judgment dismissing the action insofar as asserted against the attorney defendants is granted.
CHRISTOPHER, FORD and WARHIT, JJ., concur.
ORDERED that on the Court's own motion, the notice of appeal from so much of the order as, sua sponte, directed the defendants Parker Law Firm, Ltd., and Timothy S. Parker to arbitrate the claims against them is deemed to be an application for leave to appeal from that portion of the order, and leave to appeal is granted (see CPLR 5701[c]); and it is further,
ORDERED that the order is reversed insofar as appealed from, on the law, the motion of the defendants Parker Law Firm, Ltd., and Timothy S. Parker pursuant to CPLR 3211(a)(8) to dismiss the action insofar as asserted against them for lack of personal jurisdiction and that branch of the cross-motion of the defendants and nonparty Harry Wilk which was to dismiss the action insofar as asserted against the defendants Parker Law Firm, Ltd., and Timothy S. Parker for lack of personal jurisdiction are denied on the merits, and that branch of the cross-motion of the defendants and nonparty Harry Wilk which was for summary judgment dismissing the action insofar as asserted against the defendants Parker Law Firm, Ltd., and Timothy S. Parker is granted; and it is further,
ORDERED that one bill of costs is awarded to the defendants Parker Law Firm, Ltd., and Timothy S. Parker.

2019-08723 ON MOTION
P.S. Finance, LLC, etc., respondent,
v Eureka Woodworks, Inc., defendant,
Parker Law Firm, Ltd., et al., appellants.
(Index No. 150833/17)

Motion by the respondent, among other things, to dismiss an appeal from an order of the Supreme Court, Richmond County, dated December 14, 2017, on the ground, inter alia, that the order is not appealable as of right and leave to appeal has not been granted. By decision and order on motion of this Court dated January 17, 2020, that branch of the motion which is to dismiss the appeal on the ground, inter alia, that the order is not appealable as of right and leave to appeal has not been granted was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the submission of the appeal, it is
ORDERED that the branch of the motion which is to dismiss the appeal on the ground, inter alia, that the order is not appealable as of right and leave to appeal has not been granted is denied.
CONNOLLY, J.P., CHRISTOPHER, FORD and WARHIT, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court

Footnotes

Footnote 1: We consider the memorandum of law for the limited purpose of determining what contentions on appeal were raised before the Supreme Court (see Town of W. Seneca v Kideney Architects, P.C., 187 AD3d 1509, 1510; Brown v Smith, 85 AD3d 1648, 1649; cf. Nyack Hosp. v Progressive Cas. Ins. Co., 296 AD2d 482, 484).

Footnote 2: The defendants also argued, among other things, that it was inappropriate for PSF to raise what they characterized as tort claims when commencing an action pursuant to CPLR 3213, which provides for the commencement of an action by summary judgment in lieu of complaint when the action is based upon an instrument for the payment of money only. However, the attorney defendants do not raise that argument on appeal. The attorney defendants also have not raised any contentions as to whether any of the documents at issue in this case may properly be considered instruments for the payment of money only within the meaning of CPLR 3213. Accordingly, we do not address these issues here.

Footnote 3: Even where a court properly directs the parties to arbitrate, the proper procedure is to stay the action pending arbitration instead of dismissing the action (see Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y., 45 NY2d 735, 738; Nachman v Jenelo Corp., 25 AD3d at 593; BR Ambulance Serv. v Nationwide Nassau Ambulance, 150 AD2d at 746).

Footnote 4: The FAA applies to any arbitration agreement evidencing a transaction involving interstate commerce (see 9 USC § 2), and the United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power" (Citizens Bank v Alafabco, Inc., 539 US 52, 56; see Highland HC, LLC v Scott, 113 AD3d 590, 592). Nevertheless, in this appeal, the parties have not argued that the FAA applies.

Footnote 5: The question of whether a party waived whatever rights it otherwise may have had to arbitration by its litigation-related conduct is for the court to decide (see Cusimano v Schnurr, 26 NY3d at 401 n 3; Skyline Steel, LLC v PilePro LLC, 139 AD3d 646, 647). Although PSF contends for the first time on the related appeal (see P.S. Finance, LLC v Eureka Woodworks, Inc., _____ AD3d _____ [Appellate Division Docket No. 2019-13095; decided herewith]), that the issue of whether it waived the right to arbitrate should be decided under the FAA, on this appeal, neither PSF nor the attorney defendants contend that the issue of waiver should be analyzed under the FAA. Accordingly, we analyze the waiver issue under New York State law. However, we note that, under the circumstances of this case, our conclusion that PSF waived whatever rights it otherwise may have had to arbitrate this dispute against the attorney defendants would be unchanged even if we were analyzing the waiver issue under the FAA (see Morgan v Sundance, Inc., _____ US at _____, 142 S Ct at 1713; Cusimano v Schnurr, 26 NY3d at 402; Louisiana Stadium & Exposition Dist. v Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F3d 156, 160 [2d Cir]; cf. Skyline Steel, LLC v PilePro LLC, 139 AD3d at 647).

Footnote 6: As PSF did not cross-appeal, we do not decide the merits of PSF's first motion for summary judgment in lieu of complaint or its second motion for summary judgment in lieu of complaint. In addition, Eureka has not appealed and, therefore, we do not decide the merits of that branch of the cross-motion which was for summary judgment dismissing the action insofar as asserted against Eureka.

Footnote 7: On appeal, the attorney defendants have not addressed whether the Parker Law Firm may be bound by Parker's execution of the Attorney Acknowledgment or whether Parker only executed the Attorney Acknowledgment in his individual capacity and not as a representative of the Parker Law Firm. As such, the attorney defendants have abandoned any arguments they may have had on these issues (see U.S. Bank Trust, N.A. v Hussain, 207 AD3d 778, 779).

Footnote 8: It is not determinative that the Attorney Acknowledgment failed to expressly incorporate the terms of the Agreement to Pay by reference. "'[D]ocuments executed at about the same time and covering the same subject matter are to be interpreted together, even if one does not incorporate the terms of the other by reference'" (Oak Rock Fin., LLC v Rodriguez, 148 AD3d at 1038, quoting Brax Capital Group, LLC v WinWin Gaming, Inc., 83 AD3d 591, 592; see Williams v Mobil Oil Corp., 83 AD2d 434, 439).

Footnote 9: The scope of the attorney defendants' contractual obligations to PSF and whether the attorney defendants breached those obligations are discussed below.

Footnote 10: In particular, Arcadia Biosciences, Inc. v Vilmorin & Cie (356 F Supp 3d 379) is distinguishable from the circumstances of the instant case. As the court in Arcadia Biosciences, Inc. itself held, the non-signatory defendant, which was a future affiliate of a signatory to the agreement containing the forum selection clause, was not sufficiently closely related to a signatory (see Arcadia Biosciences, Inc. v Vilmorin & Cie, 356 F Supp 3d at 395-396). The future affiliate was formed eight years after the contract had been executed (see id.; see also Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd., 184 AD3d at 123 [distinguishing Arcadia Biosciences, Inc. v Vilmorin & Cie upon the grounds that it was not foreseeable that a future affiliate would be bound by the forum selection clause]).

Footnote 11: We note that this argument is inconsistent with PSF's contention that the attorney defendants are bound by the arbitration and forum selection provisions, both of which were contained in the Agreement to Pay. We likewise note that the attorney defendants' position on PSF's breach of contract claim is inconsistent with their contention that they are not bound by the forum selection or arbitration provisions of the Agreement to Pay, yet they rely upon language in the Agreement to Pay to support their contention that they did not have a contractual obligation to pay PSF.

Footnote 12: A "Quick Payment," which was defined by the GCCF Rules as a payment of $5,000 to an individual claimant or $25,000 to a business claimant and is not at issue in this case, also required the claimant to execute a full release precluding the claimant from seeking further compensation from the GCCF, the Coast Guard, or in court from any defendant allegedly responsible for the oil spill.

Footnote 13: We do not address the attorney defendants' contention that the Franco email was not in admissible form, as this contention was improperly raised for the first time in the attorney defendants' reply brief on appeal (see Vantroba v Zodiaco, 193 AD3d 1014, 1016; see also Bank of N.Y. Mellon v Gordon, 171 AD3d 197, 202 ["as a general matter, a court should not examine the admissibility of evidence submitted in support of a motion for summary judgment unless the nonmoving party has specifically raised that issue in its opposition to the motion"]).